UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| TIMOTHY DAILEADER,<br><br>                          Plaintiff,<br><br>  - against -<br><br>CERTAIN UNDERWRITERS AT LLOYD'S<br>LONDON – SYNDICATE 1861, SUBSCRIBING<br>TO POLICY NO. ANV122398A; CRUM &<br>FORSTER SPECIALTY INSURANCE COMPANY;<br>CERTAIN UNDERWRITERS AT LLOYD'S<br>SUBSCRIBING TO POLICY NUMBER<br>DOH00746111; and STARSTONE SPECIALTY<br>INSURANCE COMPANY,<br><br>                          Defendants. | Civ. Action No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT

Plaintiff Timothy Daileader ("Daileader"), as and for his Complaint against Defendants

Certain Underwriters at Lloyd's London – Syndicate 1861, Subscribing to Policy No.

ANV122398A; Crum & Forster Specialty Insurance Company; Certain Underwriters at Lloyd's

Subscribing to Policy Number DOH00746111; and StarStone Specialty Insurance Company

(collectively, the "Excess Insurance Companies"), alleges as follows:

## NATURE OF THE ACTION

1.      This action arises out of the Excess Insurance Companies' wrongful refusal and

denial of their obligations to provide insurance coverage to Daileader under excess directors and

officers ("D&O") liability insurance policies for claims asserted in a demand letter and a series

of adversary proceedings that have been brought against Daileader by the Chapter 7 Trustee of

the bankruptcy estates of Oaktree Medical Centre, LLC; Oaktree Medical Centre PC; and

Labsource, LLC (collectively, "Oaktree" or the "Debtors").  The bankruptcy cases and adversary

proceedings are currently pending in the United States Bankruptcy Court for the District of South Carolina before the Honorable Helen E. Burris, Chief U.S.B.J, identified with case numbers 19-05154-hb, 19-05155-hb and 19-05161-hb, and adversary proceeding numbers 21-80057-hb, 21-80058-hb and 21-80059-hb.

2.      The Excess Insurance Companies have denied coverage to Daileader based <u>solely</u> on the so-called "Bankruptcy/Insolvency Exclusion" in their primary D&O liability insurance policy to which the Excess Insurance Companies' policies "follow form."

3.      In this action, Daileader seeks declaratory judgment: (1) that, upon attachment of their limits, the excess D&O liability insurance policies obligate the Excess Insurance Companies to provide Daileader with insurance coverage (including a defense and indemnity) for the Trustee's claims; (2) that the Excess Insurance Companies cannot meet their burden of proving that the Bankruptcy/Insolvency Exclusion unambiguously precludes coverage for the Trustee's claims because it does not apply to the Trustee's claims; and (3) even if the Bankruptcy/Insolvency Exclusion applied to the Trustee's claims; the Excess Insurance Companies still cannot meet their burden of proving that the Bankruptcy/Insolvency Exclusion unambiguously precludes coverage because the Bankruptcy/Insolvency Exclusion is unenforceable under Section 365(e)(1) or Section 541(c)(1) of the United States Bankruptcy Code.

4.      Daileader also seeks a judicial determination that the Excess Insurance Companies have breached their contractual obligations and their implied covenant of good faith and dealing under their excess D&O liability insurance policies.

## THE PARTIES

5.       Plaintiff Timothy Daileader is an individual residing in the State of New York. At all relevant times, Daileader was Co-Manager or Manager of Oaktree Medical Centre, LLC and Labsource, LLC, and the sole director of Oaktree Medical Centre PC.

6.       Upon information and belief, Defendant Certain Underwriters at Lloyd's London – Syndicate 1861, Subscribing to Policy No. ANV122398A, are individuals and entities who are underwriting members of Lloyd's Syndicate 1861, subscribing to Policy Number ANV122398A ("Syndicate 1861").

7.       Upon information and belief, Defendant Crum & Forster Specialty Insurance Company ("Crum & Forster") is an insurance company organized under the laws of the State of Delaware with its principal place of business in Morristown, New Jersey.

8.       Upon information and belief, Defendant Certain Underwriters at Lloyd's Subscribing to Policy Number DOH00746111 are individuals and entities who are underwriting members of individual syndicates subscribing to Policy Number DOH00746111 ("Certain Underwriters").  Upon information and belief, the individual syndicates are:  AML 2001, CHN 2015, CGM 2488, NAV 1221, BRT 2987, AMA 1200, MKL 3000, MRS 457, HDU 382.

9.       Upon information and belief, Defendant StarStone Specialty Insurance Company ("StarStone") is an insurance company organized and existing under the laws of the State of Delaware with its principal place of business in Jersey City, New Jersey.

## JURISDICTION AND VENUE

10.      This Court has personal jurisdiction over the Excess Insurance Companies pursuant to S.C. Code §§ 36-2-803(A)(1), (A)(2), (A)(6), and (A)(7) because the Excess Insurance Companies transacted business in the State of South Carolina and contracted to provide the insurance policies from which this action arises in the State of South Carolina.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1334(b), and 1367.

12.     Venue is proper in this District pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

13.     Assignment of this case to the Spartanburg Division is proper pursuant to Local Civ. R. 3.01(A)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this Division.

## FACTUAL BACKGOUND

## The D&O Insurance Policies

14.     Oaktree purchased a multi-layered liability insurance program covering policy periods from July 9, 2018 to January 9, 2020.  The insurance program provides liability coverage, among other things, for the directors and officers of Oaktree Medical Centre LLC and related entities and companies.  The total limits of liability for the program are $10 million.

15.     Non-party primary insurance company, Landmark American Insurance Company ("Landmark"), sold the first layer of the insurance program consisting of the primary policy, Private Company Management Liability Policy, Policy Number LHP677660, for the period July 9, 2018 to January 9, 2020, with a limit of liability of $1,000,000 (the "Primary Policy").  The Primary Policy is attached as Exhibit A.

16.     The Excess Insurance Companies each sold a separate excess insurance policy that "follow forms" to the Primary Policy (collectively, the "Excess Policies").

17.     Syndicate 1861 sold the first-layer excess policy, Excess Professional Liability Insurance Policy, Policy Number ANV122398A, for the policy period of August 22, 2018 to

January 9, 2020, with a limit of liability of $1,000,000 in excess of $1,000,000 (the "Syndicate 1861 Excess Policy").  A copy of the Syndicate 1861 Excess Policy is attached as Exhibit B.

18.     Crum & Forster sold the second-layer excess policy, Excess Liability Policy, Policy Number EPP-100004, for the policy period of August 22, 2018 to January 9, 2020, with a limit of liability of $1,000,000 excess of $2,000,000 (the "Crum & Forster Excess Policy").  A copy of the Crum & Forster Excess Policy is attached as Exhibit C.

19.     Certain Underwriters sold the third-layer excess policy, Excess Insurance for Business policy, Policy Number EPP-100004, for the policy period of August 22, 2018 to January 9, 2020, with a limit of liability of $1,000,000 excess of $3,000,000 (the "Certain Underwriters Excess Policy").  A copy of the Certain Underwriters Excess Policy is attached as Exhibit D.

20.     StarStone sold the fourth-layer excess policy, Management and Professional Liability Follow Form Excess Insurance Policy, Policy Number H70164180ASP, for the policy period or December 11, 2018 to January 9, 2020 with a limit of liability of $5,000,000 in excess of $5,000,000 (the "StarStone Excess Policy").  A copy of the StarStone Excess Policy is attached as Exhibit E.

21.     The Excess Policies follow form to the Primary Policy.

22.     The relevant coverage section of the Primary Policy is the "Directors and Officers Liability Coverage Section (Private)" (the "D&O Coverage Section").

23.     The Insuring Agreements of the D&O Coverage Section state that "the Insurer agrees":

SECTION I. - INSURING AGREEMENTS

Directors and Officers Liability

A.      With the Insured Person, that if a Claim for a Wrongful Act is first made against any Insured Person during the Policy Period and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the Insurer will pay on behalf of such Insured Person all Loss such Insured Person is legally obligated to pay, except and to the extent that the Insured Organization is required or permitted to indemnify such Insured Person for such Loss.

B.      With the Insured Organization, that if a Claim for a Wrongful Act is first made against any Insured Person during the Policy Period and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the Insurer will pay on behalf of the Insured Organization all Loss for which the Insured Organization is required or permitted to indemnify the Insured Person.

C.      With the Insured Organization, that if a Claim for a Wrongful Act is first made against the Insured Organization during the Policy Period and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the Insurer will pay on behalf of the Insured Organization all Loss the Insured Organization is legally obligated to pay.

24.      The D&O Coverage Section defines "Insured" as "any Insured Organization and/or any Insured Person" and defines "Insured Person" in pertinent part as "Any past, present or future director, officer, or Employee, management committee members or members of the Board of Managers of the Insured Organization[.]"

25.      The Primary Policy defines "Insured Organization" as "the organization named in Item 1. of the Declarations Page and any Subsidiary or Affiliate existing prior to or at the inception date of this policy and listed on the Application attached."

26.      The D&O Coverage Section defines "Claim" in pertinent part as: "1. A written demand for monetary or non-monetary relief; [and] 2. A civil, criminal, administrative, regulatory or arbitration proceeding, or arbitration demand for monetary or non-monetary relief which is commenced by: a. Receipt or service of a complaint or similar pleading[.]"

27.     The D&O Coverage Section defines "Wrongful Act" as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by: 1. An Insured Person acting in his or her capacity as such and on behalf of the Insured Organization or any matter claimed against them solely by reason of their status as an Insured Person; or 2. The Insured Organization."

28.     The D&O Coverage Section defines "Loss" in pertinent part as "damages, settlements, judgments (including pre- and post-judgment interest on a covered judgment) and Defense Expenses."

29.     The Primary Policy defines "Defense Expenses" in pertinent part as "reasonable and necessary legal fees and expenses incurred, with the Insurer's consent, by any Insured in defense of a Claim, including any appeal therefrom."

30.     The Primary Policy includes a "Duty to Defend," which states that "It shall be the right and duty of the Insurer to defend any Claim against any Insured for which coverage applies under this policy."

### The Bankruptcy Cases and the Adversary Proceedings

31.     Daileader was a co-Manager at Oaktree Medical Centre, LLC; Manager at Labsource, LLC; and the sole, independent director of Oaktree Medical Centre PC (collectively, "Oaktree" or the "Debtors").

32.     Oaktree was a group of affiliated companies that along with other companies under common ownership and control provided pain management healthcare services. Specifically, Oaktree Medical Centre PC was a pain management practice that was privately owned by a non-practicing chiropractor, Daniel McCollum.  Labsource LLC was Oaktree's toxicology laboratory.  Oaktree Medical Centre, LLC was Oaktree's management service organization under three service agreements entered with professional corporations owning

clinical assets and employing medical providers in North Carolina, Tennessee, and South Carolina clinics in 2017.

33.     In July 2018, Daileader was appointed as an Independent Director and Manager of Oaktree Medical Centre PC and Labsource LLC, respectively, by Fidus Investment Corporation, as Collateral Agent to the lenders, following Oaktree's January 2018 default on loans initially borrowed under an investment agreement in May 2014. In December 2018, Daileader was appointed as co-Manager of Oaktree Medical Centre, LLC by consent of its member-owner, Daniel McCollum.  At the time that Daileader first was appointed by the Collateral Agent's actions in July 2018, the aggregate amount owed to the lenders exceeded $22 million.

34.     From December 2018 to June 2019, Daileader and Daniel McCollum were co-managers of Oaktree Medical Centre, LLC.  On June 20, 2019, Fidus Investment Corporation, as collateral manager, exercised its rights and remedies under the investment agreement and removed McCollum's capacity to act as a manager, leaving Daileader as the sole manager of Oaktree Medical Centre, LLC.

35.     This action arises out of the Excess Insurance Companies' wrongful refusal and denial of their obligations to provide insurance coverage to Daileader under the Excess Policies for claims asserted in a demand letter and a series of adversary proceedings against Daileader by John K. Fort, the Chapter 7 Trustee of the bankruptcy estates (the "Bankruptcy Estates") of Oaktree Medical Centre, LLC; Oaktree Medical Centre PC; and Labsource, LLC.

36.     The Debtors filed petitions for relief under Chapter 7 of the United States Bankruptcy Code in the Western District of North Carolina on September 19, 2019.

37.     On or about October 1, 2019, the Bankruptcy Cases were transferred to the United

States Bankruptcy Court for the District of South Carolina, where they are currently pending

before the Honorable Helen E. Burris, Chief U.S.B.J., identified with case numbers 19-05154-hb,

19-05155-hb, and 19-05161-hb (the "Bankruptcy Cases").

38.     On October 2, 2019, John K. Fort was appointed as the Chapter 7 Trustee in the

Bankruptcy Cases (the "Trustee").

39.     By letter dated April 1, 2021 from the Trustee's counsel, the Trustee alleged that

Daileader and a third party, Huron Consulting Services ("HCS"), are liable to the Bankruptcy

Estates based on an alleged breaches of "fiduciaries duties while engaged as officers and

directors of the Debtors" (the "Demand Letter").

40.     In the Demand Letter, the Trustee threatened to file an adversary proceeding

against Daileader and HCS that "likely will include causes of action for Breach of Fiduciary

Duty, Negligence, Negligent Misrepresentation, Gross Negligence, Unfair Trade Practices,

Fraud, Breach of Contract, Breach of Contract Accompanied by Fraudulent Act, Unjust

Enrichment, Conversion, Civil Conspiracy, as well as 11 USC § 547 (Insider) and § 548 claims."

41.     In June 2021, Daileader received from Fort's counsel a draft adversary proceeding

complaint captioned *John K. Fort, Trustee v. Aaron Kibbey, et al.* (the "Draft Complaint").

42.     The Draft Complaint names Daileader, HCS, and a third party, Aaron Kibbey, as

defendants.  The allegations in the Draft Complaint are similar to those set forth in the Demand

Letter.  The Draft Complaint set forth the following causes of action: (1) Breach of Fiduciary

Duty as to All Defendants; (2) Aiding and Abetting a Breach of Fiduciary Duty as to Huron;

(3) Negligence/Gross Negligence as to All Defendants; (4) Violation of the South Carolina

Unfair Trade Practices Act ("UPTA") S.C. Code Ann. § 39-5-10 et seq. as to All Defendants;

(5) Unjust Enrichment as to Daileader and Huron; (6) Bankruptcy Code Section 548(a)(1)(A) (Actual Fraud); (7) Bankruptcy Code Section 548(a)(1)(B) (constructive fraud); (8) Bankruptcy Code Section 547 (Preferences); and (9) Bankruptcy Code Section 550 (Recovery of Avoided Transfers).

43.     By letter dated June 28, 2021 to the Excess Insurance Companies, the Trustee demanded that the Excess Insurance Companies tender their policy limits.

44.     On or about September 17, 2021, the Trustee filed three analogous adversary proceeding complaints captioned *John K. Fort, Trustee v. Aaron Kibbey, et al.*, in the Bankruptcy Cases in the United States Bankruptcy Court for the District of South Carolina. (collectively, the "Adversary Proceedings Complaints").  The adversary proceedings, identified with adversary proceeding numbers 21-80057-hb, 21-80058-hb and 21-80059-hb, are referred to collectively as the "Adversary Proceedings."

45.     The Adversary Proceedings Complaints name the following defendants: (1) Kibbey, individually and as Chief Restructuring Officer of Oaktree Medical Centre, PC; (2) Timothy Daileader, individually and as Independent Director of Oaktree Medical Centre PC; (3) Huron Consulting Services, LLC aka Huron Consulting Group; (4) Mark Freedlander; (5) David Pivnick, and (6) McGuireWoods LLP.

46.     The Adversary Proceedings Complaints contain similar allegations as those in the Demand Letter and the Draft Complaint and add the additional defendants referenced in the foregoing paragraph.  The Adversary Proceedings Complaints set forth the following causes of action: (1) Breach of Fiduciary Duty as to All Defendants; (2) Aiding and Abetting a Breach of Fiduciary Duty as to Huron; (3) Negligence/Gross Negligence as to All Defendants and Lawyers' Professional Malpractice; (4) Violation of the South Carolina Unfair Trade Practices

Act ("UPTA") S.C. Code Ann. § 39-5-10 et seq. as to All Defendants; (5) Fraud as to Mr.

Daileader and Mr. Kibbey; (6) Civil Conspiracy as to All Defendants; (7) Unjust Enrichment as

to Mr. Daileader, Huron and McGuireWoods; (8) Bankruptcy Code Section 548(a)(1)(A) (Actual

Fraud) as to All Defendants; (9) Bankruptcy Code Section 548(a)(1)(B) (Constructive Fraud) as

to All Defendants; (10) Bankruptcy Code Section 547 (Preferences) as to All Defendants;

(11) Bankruptcy Code Section 329 as to McGuireWoods (Unreasonable Compensation); and

(12) Bankruptcy Code Section 550 (Recovery of Avoided Transfers).

47.     On or about December 7, 2021, Trustee filed three analogous amended adversary

proceeding complaints in the Bankruptcy Cases in the United States Bankruptcy Court for the

District of South Carolina (collectively, "Amended Adversary Proceedings Complaints").

48.     The allegations and causes of action against Daileader in the Amended Adversary

Proceedings Complaints are nearly identical to the Adversary Proceedings Complaints, except

that they remove the cause of action for a violation of the South Carolina Unfair Trade Practices

Act against all defendants and add a breach of contract claim.

49.     The Demand Letter, the Draft Complaint, the Adversary Proceedings Complaints,

and the Amended Adversary Proceedings Complaints are referred to collectively as the

"Trustee's Claims."

50.     In the Amended Adversary Proceedings Complaints, the Trustee generally alleges

that Oaktree was already insolvent when Daileader was appointed as an Independent Director

and Manager of Oaktree in 2018 and that Daileader breached his fiduciary duties and committed

negligence when he failed to have Oaktree file for Chapter 11 bankruptcy following his

appointment.  Among other allegations, the Trustee alleges that Daileader committed fraud by

failing to disclose that he did not have the requisite experience to restructure a health care

company and that Daileader was unjustly enriched when he was paid for his role as an Independent Director and Manager.

### Daileader Tenders the Trustee's Claims to the Insurance Companies for Coverage

51.     Daileader tendered and gave timely notice of the Trustee's Claims to Oaktree's primary insurance company, Landmark, and the Excess Insurance Companies for coverage under the Primary Policy and the Excess Policies.

52.     Pursuant to the terms of the Primary Policy and the Excess Policies, the Trustee's Claims are a "Claim" that triggers the Excess Insurance Companies coverage obligations, including their duty to defend and indemnify Daileader against the Trustee's Claims.

53.     As discussed below, because the Excess Insurance Companies have specifically denied and continue to refuse to honor their insurance coverage obligations under the Excess Policies, Daileader has been forced to sue the Excess Insurance Companies for declaratory relief and breach of contract regarding the Excess Insurance Companies' obligations to provide insurance coverage to which he is entitled under the Excess Insurance Policies for the Trustee's Claims.

### The Primary Insurance Company, Landmark, Agrees to Defend Daileader

54.     By letters dated April 30, 2021, June 25, 2021, October 29, 2021, and February 22, 2022, the primary insurance company, Landmark, advised Daileader that coverage is available for the Trustee's Claims.

55.     Landmark agreed to and has continued to defend Daileader against the Trustee's Claims under the Primary Policy, subject to written reservations of rights.

56.     Although the limit of liability of the Primary Policy has not yet exhausted, the expenditure of defense costs is rapidly approaching the limit of liability of the Primary Policy, and the alleged liability and damages in the Trustee's Claims far exceed the total limits of each

and all of the Excess Policies.  Accordingly, the total potential liability for the Trustee's Claims could exceed the total limits of the Excess Policies.

**The Excess Insurance Companies Acknowledge that the Allegations in the Trustee's Claims Trigger Coverage But Improperly Deny Coverage Based Solely on the So-Called "Bankruptcy/Insolvency Exclusion"**

57.    By letter dated August 2, 2021, Syndicate 1861 "acknowledge[d] that the allegations in the [Demand Letter] and the Draft Complaint are a Claim that could trigger the [Syndicate 1861 Excess Policy] for Daileader for the same reasons as set forth [by Landmark]." By letter dated October 27, 2021, Syndicate 1861 "acknowledge[d] that the allegations in the [Adversary Proceedings Complaints] are a Claim that could trigger the [Syndicate 1861 Excess Policy] for Daileader …."  Despite Landmark agreeing to defend Daileader for these claims and despite Syndicate 1861's acknowledgement that these claims trigger coverage, Syndicate 1861 denied coverage to Daileader based solely on the so-called "Bankruptcy/Insolvency Exclusion."

58.    By letter dated August 3, 2021, Crum & Forster acknowledged that the Demand Letter and the Draft Complaint triggered coverage under the Crum & Forster Excess Policy and "adopt[ed] and … incorporate[d] Landmark's position[ ] … that coverage is potentially implicated, in the first instance, under Insuring Agreement B [of the Primary Policy]."  By letter dated November 3, 2021, Crum & Forster advised that the "reservations of rights and coverage positions set forth in [its] August 3rd letter … apply equally to the [Adversary Proceedings Complaints]."  Despite Landmark agreeing to defend Daileader for these claims and despite Crum & Forster's acknowledgement that these claims trigger coverage, Crum & Forster denied coverage based solely on the so-called "Bankruptcy/Insolvency Exclusion."

59.    By letter dated August 24, 2021, StarStone "acknowledge[d] that the allegations in the [Demand Letter] and the Draft Complaint are a Claim that could trigger the [StarStone Excess Policy] for Daileader for the same reasons as set forth [by Landmark]."  By letter dated

13

November 5, 2021, StarStone "acknowledge[d] that the allegations in the [Adversary Proceedings Complaints] are a Claim that could trigger the [StarStone Excess Policy] for Daileader for the same reasons as set forth [by Landmark]."  Despite Landmark agreeing to defend Daileader for these claims and despite StarStone's acknowledgement that these claims trigger coverage, StarStone denied coverage based solely on the so-called "Bankruptcy/Insolvency Exclusion."

### <u>The Excess Insurance Companies' Improper Declaratory Judgment Action</u>

60.     On February 1, 2022, Syndicate 1861, Crum & Forster, and StarStone sued Daileader and another Insured, Aaron Kibbey, in the Supreme Court of the State of New York, County of New York for declaratory judgment of no coverage for the Trustee's Claims (the "Declaratory Judgment Action").  On February 18, 2022, the Excess Insurance Companies filed an Amended Complaint in the Declaratory Judgment Action, which added as plaintiffs Certain Underwriters.

61.     The Declaratory Judgment Action is improper for a host of reasons, including the fact that the Excess Insurance Companies commenced that action in a jurisdiction that has no connection to this coverage dispute or the Trustee's Claims, which are proceeding in this District Court in the United States Bankruptcy Court for the District of South Carolina.

62.     In the Declaratory Judgment Action, the Excess Insurance Companies seek a declaration that they have no duty to defend or indemnify Daileader.  The Excess Insurance Companies' <u>only</u> basis for seeking the declaration of no coverage is that the so-called "Bankruptcy/Insolvency Exclusion" in the Primary Policy precludes coverage entirely for the Trustee's Claims.

63.     By their letters and the Declaratory Judgment Action, the Excess Insurance Companies have misrepresented the scope of insurance coverage under the Primary Policy and

the Excess Policies by providing unreasonable interpretations of the policy terms and willfully ignoring well settled insurance coverage law.

64.     The Excess Insurance Companies' misconduct includes wrongfully denying their duties to defend Daileader, to which he is entitled under the Excess Policies if the allegations of the Trustee's Claims even create the possibility of coverage under the Excess Policies.  The Excess Insurance Companies have wrongfully denied their duties to defend, despite their acknowledgment that the underlying claims trigger coverage under the Excess Policies and Landmark's agreement to defend Daileader under the Primary Policy.

65.     The Excess Insurance Companies' misconduct includes wrongfully denying insurance coverage based upon the frivolous argument that the so-called "Bankruptcy/Insolvency Exclusion" in the Primary Policy entirely precludes coverage for the Trustee's Claims.

66.     The so-called "Bankruptcy/Insolvency Exclusion" in the Primary Policy states:

> The Insurer shall not be liable to make any payment for Loss under this policy in connection with any Claim made against any Insured:
>
> 1. Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, any Wrongful Act that is alleged to have caused, directly or indirectly, in whole or in part:
>
>    a. The bankruptcy or insolvency of the Insured Organization;
>
>    b. The Insured Organization's filing of a petition, or a petition being filed against the Insured Organization pursuant to the federal Bankruptcy Code or any similar state law;
>
>    c. The Insured Organization assigning its assets for the benefit of its creditors; or
>
>    d. By any other means seeking protection under the common or statutory law as a result of insolvency or financial impairment.
>
> 2. Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, the Insured Organization having sustained a financial loss due to a Wrongful Act by or on behalf of any

Insured Person that actually or allegedly occurred before the date that the Insured Organization or other party sought protection of the Insured Organizations assets by any means including but not limited to those referenced in sections 1. a. through 1. d. of this endorsement.

3. Brought or maintained by or on behalf of any creditor or debt-holder of the Insured Organization, or any Claim arising out of any actual or alleged Wrongful Act, where such Wrongful Act actually or allegedly results in the Insured Organization's failure, refusal or inability to pay debts or amounts due and owing, including but not limited to Claims alleging misrepresentation in connection with any extension of credit or in connection with the purchase or sale of a debt instrument, or Claims alleging any Wrongful Acts where such Wrongful Acts actually or allegedly result in the deterioration in the value of any debt instrument or security as a result of, wholly or in part the bankruptcy or insolvency of the Insured Organization.

67.     This Excess Insurance Companies' purported basis for denial of any coverage under the so-called Bankruptcy/Insolvency Exclusion is unsupported by and inconsistent with the policy language of the Excess Policies and the allegations in the Trustee's Claims.

68.     For example, by its terms, the Bankruptcy/Insolvency Exclusion is only triggered when the Insured has "caused … the bankruptcy or insolvency of the Insured Organization." The Trustee's Claims allege that Oaktree was already insolvent when Daileader was appointed as an Independent Director and Manager of Oaktree and that Daileader breached his fiduciary duties by failing to file for Chapter 11 bankruptcy at the outset of his appointment – not by causing a bankruptcy filing.

69.     Accordingly, the Excess Insurance Companies cannot meet their burden of proving that the Bankruptcy/Insolvency Exclusion unambiguously excludes coverage for the Trustee's Claims.

70.     In addition, the Excess Insurance Companies' purported basis for denial ignores cases holding that the "Bankruptcy/Insolvency Exclusion" is unenforceable under Sections 365(e)(1) and 541(c)(1) of the United States Bankruptcy Code. *See, e.g.*, *In re Cmty. Mem'l*

16

*Hosp.*, No. 16-cv-14434, 2019 WL 3296994, (E.D. Mich. 2019); *Yessenow v. Exec. Risk Indem., Inc.*, 2011 IL App (1st) 102920 (Ill. App. 2011). The Excess Insurance Companies were aware of these decisions when they denied coverage and sued Daileader in the Declaratory Judgment Action.

71.     The Excess Insurance Companies cannot meet their burden of proving that the "Bankruptcy/Insolvency Exclusion" unambiguously precludes coverage for the Trustee's Claims. Moreover, even if the Excess Insurance Companies could prove that the terms of the "Bankruptcy/Insolvency Exclusion" potentially apply to the Trustee's Claims, the Excess Insurance Companies still cannot meet their burden of proving that the "Bankruptcy/Insolvency Exclusion" unambiguously precludes coverage for the Trustee's Claim, because the "Bankruptcy/Insolvency Exclusion" is invalid and unenforceable under Sections 541(c) and 365(e)(1) of the United States Bankruptcy Code.

72.     The "Bankruptcy/Insolvency Exclusion" is invalid and unenforceable under Sections 541(c) and 365(e)(1) of the United States Bankruptcy Code because, by its terms, it is conditioned on the insolvency or financial condition of the debtor or the commencement of a bankruptcy case.

73.     The "Bankruptcy/Insolvency Exclusion" is invalid and unenforceable under Section 365(e)(1) of the United States Bankruptcy Code because the Excess Policies are executory contracts as to which the Bankruptcy Code's prohibition against *ipso facto* provisions applies.

74.     The Excess Insurance Companies' misconduct includes failing to make their policy limits available to resolve the Trustee's Claims.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

75.     Daileader repeats and realleges paragraphs 1 through 75 of the Complaint as if fully set forth herein.

76.     Pursuant to 28 U.S.C. § 2201, Daileader seeks declaratory judgment for the purpose of determining questions of actual controversy between the parties regarding the Excess Policies.

77.     Daileader is an Insured under the Excess Policies.

78.     The Trustee's Claims trigger the Excess Insurance Companies' coverage obligations.

79.     The Excess Insurance Companies have breached their obligations under the Excess Policies by failing to honor or by disputing their coverage obligations under the Excess Policies with respect to the Trustee's Claims.

80.     Daileader is entitled to a declaratory judgment by this Court of his rights and the obligations of Excess Insurance Companies under the Excess Policies with respect to the Trustee's Claims.

81.     An actual and justiciable controversy has arisen between Daileader and the Excess Insurance Companies as to the meaning and application the Excess Policies, including: (1) whether the so-called "Bankruptcy/Insolvency Exclusion" precludes coverage for the Trustee's Claims; and (2) whether the "Bankruptcy/Insolvency Exclusion" is void and unenforceable under Sections 365(e)(1) and 541(c)(1) of the United States Bankruptcy Code.

82.     By reason of the foregoing, an actual and justiciable controversy exists between Daileader and the Excess Insurance Companies regarding the Excess Insurance Companies' obligations to cover the Trustee's Claims.

83.     Daileader thus seeks a judicial determination by this Court of Excess Insurance Companies' obligations to cover him for the Trustee's Claims.

84.     Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

85.     Daileader repeats and realleges paragraphs 1 through 85 of the Complaint as if fully set forth herein.

86.     Under the terms of the Excess Policies, the Excess Insurance Companies have a contractual obligation to provide insurance coverage to Daileader for the Trustee's Claims.

87.     Notwithstanding this obligation, the Excess Insurance Companies, by denying coverage for the Trustee's Claims, and by refusing to accept coverage without limitation or reservation, have violated their obligations to Daileader and therefore breached the Excess Policies.

88.     Daileader has satisfied all obligations currently owing under the Excess Policies and has complied with all conditions necessary for coverage under the Excess Policies.

89.     The Excess Insurance Companies' breaches, actions, and conduct described above constitute a breach of contract.

90.     As a direct and proximate result of the Excess Insurance Companies' breach of contract, the Excess Insurance Companies are liable to Daileader for damages, the exact amount to be proven at trial, including but not limited to, compensatory and consequential damages, attorneys' fees and costs, and pre- and post-judgment interest.

**THIRD CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

91.     Daileader repeats and realleges paragraphs 1 through 91 of the Complaint as if fully set forth herein.

92.     By wrongfully denying insurance coverage based upon frivolous arguments and by denying coverage simply in furtherance of their own financial interests and in detriment to Daileader's interests, the Excess Insurance Companies have breached the implied covenant of good faith and fair dealing inherent in the Excess Policies.

93.     The acts alleged against the Excess Insurance Companies were unreasonable and constituted breaches of the duty of good faith and fair dealing implied into the Excess Policies.

94.     As a direct and proximate result of the Excess Insurance Companies' breaches of the duty of good faith and fair dealing, the Excess Insurance Companies are liable to Daileader for damages, the exact amount to be proven at trial, including but not limited to, compensatory and consequential damages, attorneys' fees and costs, and pre- and post-judgment interest.

WHEREFORE, Daileader respectfully requests judgment as follows:

1.     With respect to the First Cause of Action:

    (a)     Declaring that, upon attachment, the Trustee's Claims are covered by the Excess Policies;

    (b)     Declaring that, upon attachment, the Excess Insurance Companies have a duty to defend Daileader against the Trustee's Claims;

    (c)     Declaring that, upon attachment, the Excess Insurance Companies have a duty to indemnify Daileader against the Trustee's Claims;

    (d)     Declaring that the Excess Insurance Companies cannot establish that the "Bankruptcy/Insolvency Exclusion" in the Primary Policy precludes coverage for the Trustee's Claims;

    (e)     Declaring that the "Bankruptcy/Insolvency Exclusion" is void and unenforceable under Section 365(e)(1) of the United States Bankruptcy Code;

(f)     Declaring that the "Bankruptcy/Insolvency Exclusion" is void and unenforceable under Section 541(c)(1) of the United States Bankruptcy Code;

(g)     Granting Daileader his attorneys' fees, expenses, and costs incurred in this action; and

(h)     Granting Daileader such other and further relief as the Court may deem just and proper.

2.     With respect to the Second and Third Causes of Action:

(a)     Awarding money damages, including but not limited to, compensatory and consequential damages, in an amount to be determined at trial, pre-judgment and post-judgment interest, and attorneys' fees, expenses, and costs incurred in this action;

(b)     Granting Daileader such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Daileader demands a trial by jury on all issues so triable.

Dated:  March 18, 2022                    Respectfully Submitted,

**WYCHE, P.A.**
By:  s/Rita Bolt Barker
_____
Rita Bolt Barker (U.S.D.C. I.D. No. 10566)
200 East Broad Street, Suite 400
Greenville, SC 29601
Telephone:  864-242-8200
Facsimile: 864-235-8900
E-mail: rbarker@wyche.com
*Attorneys for Defendant Timothy Daileader*