**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

|  |  |
|---|---|
| TIMOTHY DAILEADER,<br><br>                                Plaintiff,<br><br>  - against -<br><br>CERTAIN UNDERWRITERS AT LLOYD'S<br>LONDON – SYNDICATE 1861, SUBSCRIBING<br>TO POLICY NO. ANV122398A; CRUM &<br>FORSTER SPECIALTY INSURANCE COMPANY;<br>CERTAIN UNDERWRITERS AT LLOYD'S<br>SUBSCRIBING TO POLICY NUMBER<br>DOH00746111; and STARSTONE SPECIALTY<br>INSURANCE COMPANY,<br><br>                              Defendants. | Civ. Action No. 7:22-CV-00916-HMH |

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF
CONTRACT, BAD FAITH COVERAGE DENIAL, BREACH OF THE IMPLIED
<u>COVENANT OF GOOD FAITH AND FAIR DEALING, AND ATTORNEYS' FEES</u>**

Plaintiff Timothy Daileader ("Daileader"), as and for his Amended Complaint against

Defendants Certain Underwriters at Lloyd's London – Syndicate 1861, Subscribing to Policy No.

ANV122398A; Crum & Forster Specialty Insurance Company; Certain Underwriters at Lloyd's

Subscribing to Policy Number DOH00746111; and StarStone Specialty Insurance Company

(collectively, the "Excess Insurance Companies"), alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.     This action arises out of the Excess Insurance Companies' wrongful refusal and

denial of their obligations to provide insurance coverage to Daileader under excess directors and

officers ("D&O") liability insurance policies for claims asserted in a demand letter and a series

of adversary proceedings that have been brought against Daileader by the Chapter 7 Trustee of

the bankruptcy estates of Oaktree Medical Centre, LLC; Oaktree Medical Centre PC; and Labsource, LLC (collectively, "Oaktree" or the "Debtors").

2.      The bankruptcy cases and adversary proceedings are currently pending in the United States Bankruptcy Court for the District of South Carolina before the Honorable Helen E. Burris, Chief United States Bankruptcy Judge, identified with case numbers 19-05154-hb, 19-05155-hb, and 19-05161-hb, and adversary proceeding numbers 21, 80057-hb, 21-80058-hb and 21-80059-hb.

3.      The Excess Insurance Companies denied coverage to Daileader based solely on the so-called "Bankruptcy/Insolvency Exclusion" in a primary D&O liability insurance policy to which the Excess Insurance Companies' policies "follow form."  However, the primary D&O insurance company, which drafted the primary policy containing the Bankruptcy/Insolvency Exclusion, agreed to honor its obligations under the primary policy and has been and is currently defending Daileader against the Trustee's claims.  Daileader's defense costs already accrued and about to be billed will completely exhaust the primary policy.

4.      In this action, Daileader seeks declaratory judgment: (1) that, upon attachment of their limits, the excess D&O liability insurance policies obligate the Excess Insurance Companies to provide Daileader with insurance coverage (including a defense and indemnity) for the Trustee's claims; (2) that the Excess Insurance Companies cannot meet their burden of proving that the Bankruptcy/Insolvency Exclusion unambiguously precludes coverage for the Trustee's claims because it does not apply to the Trustee's claims; and (3) even if the Bankruptcy/Insolvency Exclusion applied to the Trustee's claims, the Excess Insurance Companies still cannot meet their burden of proving that the Bankruptcy/Insolvency Exclusion unambiguously precludes coverage because the Bankruptcy/Insolvency Exclusion is

unenforceable under Section 365(e)(1) or Section 541(c)(1) of the United States Bankruptcy Code.

5.       Daileader also seeks a judicial determination that the Excess Insurance Companies have breached their contractual obligations and their implied covenant of good faith and dealing under their excess D&O liability insurance policies and have denied coverage in bad faith.

6.       Finally, Daileader seeks to recover – from Defendant Certain Underwriters at Lloyd's London – Syndicate 1861, Subscribing to Policy No. ANV122398A – his attorneys' fees, expenses, and costs incurred in this action, under the doctrine announced by the New York Court of Appeals in *Mighty Midgets, Inc. v. Centennial Insurance Co.*, 47 N.Y.2d 12 (1979).

## THE PARTIES

7.       Plaintiff Timothy Daileader is an individual residing in the State of New York. At all relevant times, Daileader was Co-Manager or Manager of Oaktree Medical Centre, LLC and Labsource, LLC, and the sole director of Oaktree Medical Centre, PC.

8.       Upon information and belief, Defendant Certain Underwriters at Lloyd's London – Syndicate 1861, Subscribing to Policy No. ANV122398A, are individuals and entities who are underwriting members of Lloyd's Syndicate 1861, subscribing to Policy Number ANV122398A ("Syndicate 1861").

9.       Upon information and belief, Defendant Crum & Forster Specialty Insurance Company ("Crum & Forster") is an insurance company organized under the laws of the State of Delaware with its principal place of business in Morristown, New Jersey.

10.     Upon information and belief, Defendant Certain Underwriters at Lloyd's Subscribing to Policy Number DOH00746111 are individuals and entities who are underwriting members of individual syndicates subscribing to Policy Number DOH00746111 ("Certain

Underwriters"). Upon information and belief, the individual syndicates are AML 2001, CHN 2015, CGM 2488, NAV 1221, BRT 2987, AMA 1200, MKL 3000, MRS 457, HDU 382. Upon information and belief, nonparty CFC Underwriting Limited is the general managing agent of Certain Underwriters of Policy Number DOH00746111.

11.     Upon information and belief, Defendant StarStone Specialty Insurance Company ("StarStone") is an insurance company organized and existing under the laws of the State of Delaware with its principal place of business in Jersey City, New Jersey.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over the Excess Insurance Companies pursuant to S.C. Code §§ 36-2-803(A)(1), (A)(2), (A)(6), and (A)(7) because the Excess Insurance Companies transacted business in the State of South Carolina and contracted to provide the insurance policies from which this action arises in the State of South Carolina.

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1334(b), and 1367.

14.     Venue is proper in this District pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

15.     Assignment of this case to the Spartanburg Division is proper pursuant to Local Civ. R. 3.01(A)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this Division.

## FACTUAL BACKGOUND

### The D&O Insurance Policies

16.     Oaktree purchased a multi-layered liability insurance program covering policy periods from July 9, 2018 to January 9, 2020. The insurance program provides liability coverage

4

for, among other things, the directors and officers of Oaktree Medical Centre LLC and related entities and companies.  The total limits of liability for the program are $10 million.

17.     Non-party primary insurance company, Landmark American Insurance Company ("Landmark"), sold the first layer of the insurance program consisting of the primary policy, Private Company Management Liability Policy, Policy Number LHP677660, for the period July 9, 2018 to January 9, 2020, with a limit of liability of $1,000,000 (the "Primary Policy").  The Primary Policy is attached as Exhibit A.

18.     The Excess Insurance Companies each sold a separate excess insurance policy that "follow form" to the Primary Policy (collectively, the "Excess Policies").

19.     Syndicate 1861 sold the first-layer excess policy, Excess Professional Liability Insurance Policy, Policy Number ANV122398A, for the policy period of August 22, 2018 to January 9, 2020, with a limit of liability of $1,000,000 in excess of $1,000,000 (the "Syndicate 1861 Policy").  A copy of the Syndicate 1861 Policy is attached as Exhibit B.

20.     Crum & Forster sold the second-layer excess policy, Excess Liability Policy, Policy Number EPP-100004, for the policy period of August 22, 2018 to January 9, 2020, with a limit of liability of $1,000,000 in excess of $2,000,000 (the "Crum & Forster Policy").  A copy of the Crum & Forster Policy is attached as Exhibit C.

21.     Certain Underwriters sold the third-layer excess policy, Excess Insurance for Business policy, Policy Number EPP-100004, for the policy period of August 22, 2018 to January 9, 2020, with a limit of liability of $2,000,000 in excess of $3,000,000 (the "Certain Underwriters Excess Policy").  A copy of the Certain Underwriters Excess Policy is attached as Exhibit D.

22.     StarStone sold the fourth-layer excess policy, Management and Professional Liability Follow Form Excess Insurance Policy, Policy Number H70164180ASP, for the policy period of December 11, 2018 to January 9, 2020 with a limit of liability of $5,000,000 in excess of $5,000,000 (the "StarStone Policy").  A copy of the StarStone Policy is attached as Exhibit E.

23.     The Excess Policies follow form to the Primary Policy, which means that they incorporate by reference terms and conditions of the Primary Policy.

24.     The Primary Policy contains several coverage sections.  The relevant coverage section of the Primary Policy is the "Directors and Officers Liability Coverage Section (Private)" (the "D&O Coverage Section").

25.     The Insuring Agreements of the D&O Coverage Section state that "the **Insurer** agrees":

**SECTION I. - INSURING AGREEMENTS**

**Directors and Officers Liability**

A.      With the **Insured Person**, that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the **Insurer** will pay on behalf of such **Insured Person** all **Loss** such **Insured Person** is legally obligated to pay, except and to the extent that the **Insured Organization** is required or permitted to indemnify such **Insured Person** for such **Loss**.

B.      With the **Insured Organization**, that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** is required or permitted to indemnify the **Insured Person**.

C.      With the **Insured Organization**, that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period**

6

and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.[1]

26.　　The D&O Coverage Section defines "**Insured**" as "any **Insured Organization** and/or any **Insured Person**" and defines "**Insured Person**" in pertinent part as "Any past, present or future director, officer, or **Employee**, management committee members or members of the Board of Managers of the **Insured Organization** …."

27.　　The D&O Coverage Section defines "**Claim**" in pertinent part as: "1.  A written demand for monetary or non-monetary relief; [and] 2. A civil, criminal, administrative, regulatory or arbitration proceeding, or arbitration demand for monetary or non-monetary relief which is commenced by: a. Receipt or service of a complaint or similar pleading …."

28.　　The D&O Coverage Section defines "**Wrongful Act**" as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by: 1. An **Insured Person** acting in his or her capacity as such and on behalf of the **Insured Organization** or any matter claimed against them solely by reason of their status as an **Insured Perso**n …."

29.　　The D&O Coverage Section defines "**Loss**" in pertinent part as "damages, settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**."

30.　　The Common Policy Terms and Conditions Section (Private) (the "Common Terms and Conditions Section") of the Primary Policy defines "**Defense Expenses**" in pertinent part as "reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom."

---

[1] All bolded words in the Primary Policy's terms are bolded within the Primary Policy itself.

31.     The Common Terms and Conditions Section of the Primary Policy, as amended by endorsement, includes a "Duty to Defend" provision, which states that "It shall be the right and duty of the **Insurer** to defend any **Claim** against any **Insured** for which coverage applies under this policy …."

### The Bankruptcy and Adversary Proceedings

32.     Daileader was a co-Manager at Oaktree Medical Centre, LLC; Manager at Labsource, LLC; and the sole, independent director of Oaktree Medical Centre PC.

33.     Oaktree was a group of affiliated companies that provided pain management healthcare services.  Specifically, Oaktree Medical Centre PC was a pain management practice that was privately owned by a non-practicing chiropractor, Daniel McCollum.  Labsource LLC was Oaktree's toxicology laboratory.  Oaktree Medical Centre, LLC was Oaktree's management service organization under three service agreements entered with professional corporations owning clinical assets and employing medical providers in North Carolina, Tennessee, and South Carolina clinics in 2017.

34.     In July 2018, Daileader was appointed as an Independent Director and Manager of Oaktree Medical Centre PC and Labsource LLC, respectively, by Fidus Investment Corporation, as Collateral Agent to the lenders, following Oaktree's January 2018 default on loans initially borrowed under an investment agreement in May 2014.  In December 2018, Daileader was appointed as co-Manager of Oaktree Medical Centre, LLC by consent of its member-owner, Daniel McCollum.  At the time that Daileader first was appointed by the Collateral Agent's actions in July 2018, the aggregate amount owed to the lenders exceeded $22 million.

35.     From December 2018 to July 2019, Daileader and Daniel McCollum were co-managers of Oaktree Medical Centre, LLC.  On June 20, 2019, Fidus Investment Corporation, as

8

collateral manager, exercised its rights and remedies under the investment agreement and removed McCollum's capacity to act as co-manager, leaving Daileader as the sole manager of Oaktree Medical Centre, LLC.

36.     This action arises out of the Excess Insurance Companies' wrongful refusal and denial of their obligations to provide insurance coverage to Daileader under the Excess Policies for claims asserted in a demand letter and a series of adversary proceedings against Daileader by John K. Fort, the Chapter 7 Trustee of the bankruptcy estates (the "Bankruptcy Estates") of the Debtors – Oaktree Medical Centre, LLC; Oaktree Medical Centre PC; and Labsource, LLC.

37.     The Debtors filed petitions for relief under Chapter 7 of the United States Bankruptcy Code in the Western District of North Carolina on September 19, 2019.

38.     On or about October 1, 2019, the Bankruptcy Cases were transferred to the United States Bankruptcy Court for the District of South Carolina, where they are currently pending before the Honorable Helen E. Burris, Chief United State Bankruptcy Judge, identified with case numbers 19-05154-hb, 19-05155-hb, and 19-05161-hb (the "Bankruptcy Cases").

39.     On October 2, 2019, John K. Fort was appointed as the Chapter 7 Trustee in the Bankruptcy Cases (the "Trustee").

40.     By letter dated April 1, 2021 from the Trustee's counsel, the Trustee alleged that Daileader and a third party, Huron Consulting Services ("HCS"), are liable to the Bankruptcy Estates based on an alleged breaches of "fiduciaries duties while engaged as officers and directors of the Debtors" (the "Demand Letter").

41.     In the Demand Letter, the Trustee threatened to file an adversary proceeding against Daileader and HCS that "likely will include causes of action for Breach of Fiduciary Duty, Negligence, Negligent Misrepresentation, Gross Negligence, Unfair Trade Practices,

Fraud, Breach of Contract, Breach of Contract Accompanied by Fraudulent Act, Unjust Enrichment, Conversion, Civil Conspiracy, as well as 11 USC § 547 (Insider) and § 548 claims." A copy of the Demand Letter is attached as Exhibit F.

42.   In June 2021, Daileader received from the Trustee's counsel a draft adversary proceeding complaint captioned *John K. Fort, Trustee v. Aaron Kibbey, et al.* (the "Draft Complaint").  A copy of the Draft Complaint is attached as Exhibit G.

43.   The Draft Complaint names Daileader, HCS, and a third party, Aaron Kibbey, as defendants.  The Draft Complaint sets forth allegations similar to those in the Demand Letter and the following causes of action: (1) Breach of Fiduciary Duty as to All Defendants; (2) Aiding and Abetting a Breach of Fiduciary Duty as to Huron; (3) Negligence/Gross Negligence as to All Defendants; (4) Violation of the South Carolina Unfair Trade Practices Act ("UPTA") S.C. Code Ann. § 39-5-10 et seq. as to All Defendants; (5) Unjust Enrichment as to Daileader and Huron; (6) Bankruptcy Code Section 548(a)(1)(A) (Actual Fraud); (7) Bankruptcy Code Section 548(a)(1)(B) (constructive fraud); (8) Bankruptcy Code Section 547 (Preferences); and (9) Bankruptcy Code Section 550 (Recovery of Avoided Transfers).

44.   By letter dated June 28, 2021 to the Excess Insurance Companies, the Trustee demanded that the Excess Insurance Companies tender their policy limits "[i]n exchange" for "the necessary release to the carriers."  The Trustee attached a copy of the Draft Complaint to the June 28 letter and advised that "[i]f any one carrier chooses not to tender [its limits] on or before the July 23rd deadline, [the Trustee's counsel] reserve[d] the right to file the [Draft Complaint] immediately (whether it be in the current form or amended to add additional causes of action)." A copy of the June 28 letter is attached as Exhibit H.

45.   The Excess Insurance Companies did not make their limits available.

46.     On or about September 17, 2021, the Trustee filed three analogous adversary proceeding complaints captioned *John K. Fort, Trustee v. Aaron Kibbey, et al.*, in the Bankruptcy Cases in the United States Bankruptcy Court for the District of South Carolina. (collectively, the "Adversary Proceedings Complaints").  The adversary proceedings, identified with case numbers 21-80057-hb, 21-80058-hb and 21-80059-hb, are referred to collectively as the "Adversary Proceedings."  Copies of the Adversary Proceedings Complaints are attached as Exhibit I, J, and K.

47.     The Adversary Proceedings Complaints name the following defendants: (1) Aaron Kibbey, individually and as Chief Restructuring Officer of Oaktree Medical Centre, PC; (2) Timothy Daileader, individually and as Independent Director of Oaktree Medical Centre PC; (3) Huron Consulting Services, LLC aka Huron Consulting Group; (4) Mark Freedlander; (5) David Pivnick, and (6) McGuireWoods LLP.

48.     The Adversary Proceedings Complaints contain allegations similar to those in the Demand Letter and the Draft Complaint and add the additional defendants referenced in the foregoing paragraph.  The Adversary Proceedings Complaints set forth the following causes of action: (1) Breach of Fiduciary Duty as to All Defendants; (2) Aiding and Abetting a Breach of Fiduciary Duty as to Huron; (3) Negligence/Gross Negligence as to All Defendants and Lawyers' Professional Malpractice; (4) Violation of the South Carolina Unfair Trade Practices Act ("UPTA") S.C. Code Ann. § 39-5-10 et seq. as to All Defendants; (5) Fraud as to Mr. Daileader and Mr. Kibbey; (6) Civil Conspiracy as to All Defendants; (7) Unjust Enrichment as to Mr. Daileader, Huron and McGuireWoods; (8) Bankruptcy Code Section 548(a)(1)(A) (Actual Fraud) as to All Defendants; (9) Bankruptcy Code Section 548(a)(1)(B) (Constructive Fraud) as to All Defendants; (10) Bankruptcy Code Section 547 (Preferences) as to All Defendants;

(11) Bankruptcy Code Section 329 as to McGuireWoods (Unreasonable Compensation); and

(12) Bankruptcy Code Section 550 (Recovery of Avoided Transfers).

49.     On or about December 7, 2021, Trustee filed three analogous amended adversary proceeding complaints in the Bankruptcy Cases in the United States Bankruptcy Court for the District of South Carolina (collectively, the "Amended Adversary Proceedings Complaints"). Copies of the Amended Adversary Proceedings Complaints are attached as Exhibit L, M, and N.

50.     The Demand Letter, the Draft Complaint, the Adversary Proceedings Complaints, and the Amended Adversary Proceedings Complaints are referred to collectively as the "Trustee's Claims."  The three adversary proceedings are referred to collectively as, the "Adversary Proceedings."

51.     In the Amended Adversary Proceedings Complaints, the Trustee generally alleges that Oaktree was already insolvent when Daileader was appointed as an Independent Director and Manager of Oaktree in 2018 and that Daileader breached his fiduciary duties and committed negligence when he failed to have Oaktree file for Chapter 11 bankruptcy.  Among other allegations, the Trustee also alleges that Daileader committed fraud by failing to disclose that he did not have the requisite experience to restructure a health care company and that Daileader was unjustly enriched when he was paid for his role as an Independent Director and Manager.

52.     For example, the Amended Adversary Proceeding Complaint with respect to Oaktree Medical Center, LLC alleges that Daileader "should have known that the only way to save [Oaktree] was an expedient Chapter 11" and that Daileader breached his fiduciary duties and committed negligence by failing to file for a Chapter 11 bankruptcy.  The Nature and Basis of Action section of the Amended Adversary Proceeding Complaint alleges:

> This Action arises out of Defendants' engagements as third-party
> officers, restructuring consultants, and professionals for the Debtor

12

and two sister entities that are companion cases hereto and any proofs of claim filed by them or their related entities.  During their tenure, they succeeded only in paying themselves and substantially increasing the Debtor's unsecured debt, for which they are liable. Defendants' actions constitute breaches of their fiduciary duties and gross negligence, and make them liable for violation of various other statutory and common law causes of action as detailed below.

The Defendants were hired to fix a healthcare conglomerate that was failing to pay its debt on a credit facility secured by, among other things, the lender's ability to place turnaround professionals into critical management positions.  Over the course of approximately one year, and while with complete financial, operational, and fiduciary control, the Defendants made no attempt to coordinate a sale or refinance of the Debtors and did not even begin a corporate restructuring.  As the Debtors' assets were quickly depleted and the liabilities grew, the Defendants collected professional fees totaling nearly $5 million.  Once there were no more funds to pay those fees, and with no concern for the unsecured creditors to whom the Defendants owed a fiduciary duty, they filed the herein Chapter 7 Petitions.

### Daileader Tenders the Trustee's Claims to the Insurance Companies for Coverage

53.     Daileader tendered and gave timely notice of the Trustee's Claims to Landmark and the Excess Insurance Companies under the Primary Policy and the Excess Policies.

54.     Pursuant to the terms of the Primary Policy and the Excess Policies, the Trustee's Claims are a "Claim for a Wrongful Act" that triggers the Excess Insurance Companies' coverage obligations under the D&O Coverage Section of the Excess Policies, including their duties to defend and indemnify Daileader against the Trustee's Claims.

### The Primary Insurance Company, Landmark, Agrees to Defend Daileader

55.     By letters dated April 30, 2021, June 25, 2021, October 29, 2021, and February 22, 2022, the primary insurance company, Landmark, advised Daileader that coverage is available for the Trustee's Claims.  Copies of Landmark's letters are attached as Exhibit O.

13

56.     Landmark agreed to and has continued to defend Daileader against the Trustee's Claims, subject to written reservations of rights, under the Primary Policy to which the Excess Insurance Companies "follow form."

57.     To dated, defense costs already accrued and about to be billed will completely exhaust the Landmark Primary Policy.

58.     In addition, the alleged liability and damages in the Trustee's Claims far exceed the total limits of each and all of the Excess Policies.  Accordingly, the total potential liability for the Trustee's Claims could exceed the total limits of the Excess Policies.

**The Excess Insurance Companies Acknowledge that the**
**Allegations in the Trustee's Claims Trigger Coverage But Improperly Deny**
**Coverage Based Solely on the So-Called "Bankruptcy/Insolvency Exclusion"**

59.     By letter dated August 2, 2021, Syndicate 1861 "acknowledge[d] that the allegations in the [Demand Letter] and the Draft Complaint are a Claim that could trigger the [Syndicate 1861 Policy] for Daileader for the same reasons as set forth [by Landmark]."  By letter dated October 27, 2021, Syndicate 1861 "acknowledge[d] that the allegations in the [Adversary Proceedings Complaints] are a Claim that could trigger the [Syndicate 1861 Policy] for Daileader …."  Despite Landmark agreeing to defend Daileader for these claims and despite Syndicate 1861's acknowledgement that these claims trigger coverage, Syndicate 1861 denied coverage to Daileader based solely on the so-called "Bankruptcy/Insolvency Exclusion."

60.     By letter dated August 3, 2021, Crum & Forster acknowledged that the Demand Letter and the Draft Complaint triggered coverage under the Crum & Forster Policy and "adopt[ed] and … incorporate[d] Landmark's position[ ] … that coverage is potentially implicated, in the first instance, under Insuring Agreement B [of the Primary Policy]."  By letter dated November 3, 2021, Crum & Forster advised that the "reservations of rights and coverage

positions set forth in [its] August 3rd letter … apply equally to the [Adversary Proceedings Complaints]."  Despite Landmark agreeing to defend Daileader for these claims and despite Crum & Forster's acknowledgement that these claims trigger coverage, Crum & Forster denied coverage based solely on the so-called "Bankruptcy/Insolvency Exclusion."

61.     By letter dated August 24, 2021, StarStone "acknowledge[d] that the allegations in the [Demand Letter] and the Draft Complaint are a Claim that could trigger the [StarStone Policy] for Daileader for the same reasons as set forth [by Landmark]."  By letter dated November 5, 2021, StarStone "acknowledge[d] that the allegations in the [Adversary Proceedings Complaints] are a Claim that could trigger the [StarStone Policy] for Daileader for the same reasons as set forth [by Landmark]."  Despite Landmark agreeing to defend Daileader for these claims and despite StarStone's acknowledgement that these claims trigger coverage, StarStone denied coverage based solely on the so-called "Bankruptcy/Insolvency Exclusion."

**The Excess Insurance Companies' Improper Declaratory Judgment Action**

62.     On February 1, 2022, Syndicate 1861, Crum & Forster, and StarStone commenced an action against Daileader and another insured, Aaron Kibbey, in the Supreme Court of the State of New York, County of New York, for declaratory judgment of no coverage for the Trustee's Claims (the "Declaratory Judgment Action").  On February 18, 2022, the Excess Insurance Companies filed an Amended Complaint in the Declaratory Judgment Action, which added Certain Underwriters as plaintiffs.

63.     The Declaratory Judgment Action is improper for a host of reasons, including that the Excess Insurance Companies commenced that action right when the Primary Policy was about to exhaust, at a critical stage of Daileader's defense of the Adversary Proceedings, in a jurisdiction that has no connection to this coverage dispute or the Trustee's Claims.  As noted,

the Adversary Proceedings are pending in the United States Bankruptcy Court for the District of South Carolina.

64.     In the Declaratory Judgment Action, the Excess Insurance Companies seek a declaration that they have no duty to defend or indemnify Daileader.  The Excess Insurance Companies' only basis for seeking the declaration of no coverage is that the so-called "Bankruptcy/Insolvency Exclusion" in the Primary Policy precludes coverage entirely for the Trustee's Claims.

### The Excess Insurance Companies' Denial of Coverage Is Improper and Incorrect

65.     By their letters and the Declaratory Judgment Action, the Excess Insurance Companies have misrepresented the scope of insurance coverage under the Primary Policy and the Excess Policies by providing unreasonable interpretations of the policy terms and willfully ignoring well-settled insurance coverage law.

66.     The Excess Insurance Companies' misconduct includes wrongfully denying their duties to defend Daileader, to which he is entitled under the Excess Policies if any of the allegations of the Trustee's Claims even create the possibility of coverage under the Excess Policies.  The Excess Insurance Companies have wrongfully denied their duties to defend, despite their acknowledgment that the Trustee's Claims trigger coverage under the Excess Policies and Landmark's agreement to defend Daileader under the Primary Policy.

67.     The Excess Insurance Companies' denial of the duty to defend, and in particular, Syndicate 1861's denial as the first-level excess insurance company, will irrevocably prejudice and irreparably harm Daileader and his defense of the Adversary Proceedings.

68.     By letter dated April 29, 2022, counsel for Landmark advised the Excess Insurance Companies that, to date, Landmark had paid over $850,000 in defense costs under the

Primary Policy.  Landmark's counsel further advised that Landmark will stop defending Daileader upon payment of the Primary Policy's $1 million aggregate limit of liability.

69.     By letter dated May 6, 2022, Mr. Daileader's defense counsel in the Adversary Proceedings advised the Excess Insurance Companies that the limits of liability of Landmark's Primary Policy "are likely to exceed the remaining limits of the Primary Policy within the next thirty (30) days."  Defense counsel requested "that Syndicate 1861 immediately retract its denial of coverage and agree to accept Mr. Daileader's defense in the adversary proceedings."  A copy of the May 6 letter is attached as Exhibit P.

70.     Defense counsel further advised the Excess Insurance Companies that the adversary proceedings "are about to begin a critical stage of discovery in the adversary proceedings" and that Daileader's "ability to mount a successful defense as to this complex and fact dependent case requires competent and diligent representation, particularly at this critical stage of the litigation.  Defense counsel further advised that "the risk of an adverse judgment in the adversary proceeding likely would have an impact beyond money damages under the Syndicate 1861 Policy, including the possibility of damages far in excess of policy limits, damage to Mr. Daileader's reputation and the risk of financial ruin."

71.     Following the May 6 letter from Daileader's defense counsel, the Excess Insurance Companies still have not withdrawn their denial of their duties to defend Daileader.

72.     Since the time that the Excess Insurance Companies received the May 6 letter, Daileader's defense costs already accrued and about to be billed in the Adversary Proceedings will completely exhaust Landmark's Primary Policy.

73.     The Excess Insurance Companies have wrongfully denied their duties to defend and indemnify based upon the frivolous argument that the so-called "Bankruptcy/Insolvency

Exclusion" in the Primary Policy entirely precludes coverage for the Trustee's Claims, despite their acknowledgment that the underlying claims trigger coverage under the Excess Policies and Landmark's agreement to defend Daileader under the Primary Policy.

74. The so-called "Bankruptcy/Insolvency Exclusion" in the Primary Policy states:

The **Insurer** shall not be liable to make any payment for **Loss** under this policy in connection with any **Claim** made against any **Insured**:

1. Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, any **Wrongful Act** that is alleged to have caused, directly or indirectly, in whole or in part:

   a. The bankruptcy or insolvency of the **Insured Organization**;

   b. The **Insured Organization's** filing of a petition, or a petition being filed against the **Insured Organization** pursuant to the federal Bankruptcy Code or any similar state law;

   c. The **Insured Organization** assigning its assets for the benefit of its creditors; or

   d. By any other means seeking protection under the common or statutory law as a result of insolvency or financial impairment.

2. Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, the **Insured Organization** having sustained a financial loss due to a **Wrongful Act** by or on behalf of any **Insured Person** that actually or allegedly occurred before the date that the **Insured Organization** or other party sought protection of the **Insured Organization's** assets by any means including but not limited to those referenced in sections a. through 1. d. of this endorsement.

3. Brought or maintained by or on behalf of any creditor or debt-holder of the **Insured Organization**, or any **Claim** arising out of any actual or alleged **Wrongful Act**, where such **Wrongful Act** actually or allegedly results in the **Insured Organization's** failure, refusal or inability to pay debts or amounts due and owing, including but not limited to **Claims** alleging misrepresentation in connection with any extension of credit or in connection with the purchase or sale of a debt instrument, or **Claims** alleging any **Wrongful Acts** where such **Wrongful Acts** actually or allegedly result in the deterioration in the value of any debt instrument or security as a result of, wholly or in part the bankruptcy or insolvency of the **Insured Organization**.

The specific limitations on coverage contained in this endorsement should not under any circumstances be interpreted to suggest the existence of coverage under terms and conditions elsewhere in this policy or in contexts other than those referenced in this endorsement.

All other terms and conditions of this policy remain unchanged.

75.     Contrary to the Excess Insurance Companies' denial, the "Bankruptcy/Insolvency Exclusion" does not preclude coverage for the Trustee's Claims.

76.     First, regarding the duty to defend, Excess Insurance Companies' duty to defend is broader than and distinct from their duty to indemnify.  Under applicable law, the Excess Insurance Companies have an absolute duty to defend an action when a claim contains an allegation in any one of its claims that could arguably be covered by the Excess Policies.  The Excess Insurance Companies' duty to defend the Trustee's Claims is not determined by the ultimate outcome the Trustee's Claims or what Daileader's ultimate liability may be, if any.

77.     Pursuant to the terms of the Primary Policy and the Excess Policies, the Trustee's Claims are a "Claim for a Wrongful Act" that triggers the Excess Insurance Companies' coverage obligations, including their duties to defend and indemnify Daileader against the Trustee's Claims.

78.     The Excess Insurance Companies have admitted that the Trustee's Claims fall within the relevant insuring agreements of the Primary Policy and the Excess Policies, thus triggering their duties to defend Daileader.

79.     The Excess Insurance Companies' position that there is no duty to defend is a position that no reasonable insurance company would take, as evidenced by Landmark's agreement to defend Daileader and well-settled law concerning an insurance company's duty to defend its policyholder.

80.     The Excess Insurance Companies' bad faith conduct includes suing Daileader in the Declaratory Judgment Action, just when Landmark's Primary Policy was about to exhaust, in a forum unconnected to either the sale of the Excess Policies, the Bankruptcy Cases, or the Adversary Proceedings.

81.     Moreover, the Excess Insurance Companies' purported basis for denial of any coverage under the so-called Bankruptcy/Insolvency Exclusion is unsupported by and inconsistent with the policy language of the Excess Policies and the allegations in the Trustee's Claims.

82.     For example, by its terms, Subpart 1 of the Bankruptcy/Insolvency Exclusion is triggered only when the Insured has "caused … the bankruptcy or insolvency of the Insured Organization."  The Trustee's Claims allege that Oaktree was already insolvent when Daileader was appointed as an Independent Director and Manager of Oaktree and that Daileader breached his fiduciary duties and was negligent by failing to file for Chapter 11 bankruptcy – not by causing a bankruptcy filing.  Accordingly, the Excess Insurance Companies cannot meet their burden of proving that Subpart 1 of the Bankruptcy/Insolvency Exclusion unambiguously excludes coverage for the Trustee's Claims.

83.     In addition, the Excess Insurance Companies' argument that the "Bankruptcy/Insolvency Exclusion" – including Subpart 2 of the exclusion – excludes coverage for the Trustee's Claims is incorrect and ignores the fact that the Primary Policy and the Excess Policies expressly provide coverage for certain allegations set forth in the Trustee's Claims.

84.     Specifically, the Primary Policy contains two "exclusions" – Exclusions 2 and 3 – that expressly lay out a framework in the Primary Policy and the Excess Policies for determining when certain allegations in the Trustee's claims are covered and when they are not.

85.     Specifically, Exclusion 2 in the Primary Policy provides:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** …

(2)     Based upon, arising out of directly or indirectly resulting from or in consequence of, or in any way involving, any criminal or deliberate fraudulent act; *provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any* **Insured** *in the* **Claim** *shall establish that such* **Insured** *committed such criminal or fraudulent act ...*" (emphasis added).  (the "Fraud Exclusion")

86.     Exclusion 3 in the Primary Policy provides:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** …

(3)     Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the gaining of any profit or advantage to with an Insured was not legally entitled; *provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any* **Insured** *in the* **Claim** *shall establish that such insured gained profit or advantage to which such Insured was not legally entitled* (emphasis added).  (the "Personal Profit Exclusion").

87.     As set forth in the Fraud and Personal Profit Exclusions, the Excess Insurance Companies expressly laid out a framework for determining when claims alleging fraud or improper personal profit are covered and when they are not.  The Fraud and Personal Profit Exclusions contain a coverage enhancement under which claims alleging fraud and improper personal profit are covered unless and until there is "a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such Insured" committed fraud or gained profit or advantage to which such Insured was not legally entitled.

88.     As noted above, in addition to alleging breach of fiduciary duty and negligence in Daileader allegedly failing to file for bankruptcy, the Trustee alleges, among other things, that Daileader committed fraud by failing to disclose that he did not have the requisite experience to

restructure a health care company and that Daileader was unjustly enriched when he was paid for his role as an Independent Director and Manager.

89.     There has been no "judgment or other final adjudication" in the Adversary Proceedings that Daileader committed fraud or received monies to which he was not entitled. Thus, the Trustee's Claims are covered under the Excess Policies.  Accordingly, the Excess Insurance Companies cannot meet their burden of proving that the Bankruptcy/Insolvency Exclusion unambiguously excludes coverage for the Trustee's Claims.

90.     The Excess Insurance Companies' interpretation of the Bankruptcy/Insolvency Exclusion conflicts with Daileader's reasonable interpretation of the coverage enhancements in the Fraud and Personal Profit Exclusions.  This conflict creates an ambiguity in the Primary Policy and Excess Policies that must be resolved in favor of coverage.

91.     Moreover, even if the terms of the Bankruptcy/Insolvency Exclusion applied to some of the allegations of the Trustee's Claims, which they do not, the Trustee's Claims make allegations against Daileader that plainly and clearly fall outside the scope of the Bankruptcy/Insolvency Exclusion, thus triggering the Excess Insurance Companies' duties to defend and indemnify.

92.     In addition, even if the terms of the Bankruptcy/Insolvency Exclusion applied to the Trustee's Claims, which they do not, the Excess Insurance Companies' purported basis for denial ignores cases holding that the "Bankruptcy/Insolvency Exclusion" is invalid and unenforceable under Sections 365(e)(1) and 541(c)(1) of the United States Bankruptcy Code. *See, e.g.*, *In re Cmty. Mem'l Hosp.*, No. 16-cv-14434, 2019 WL 3296994 (E.D. Mich. 2019); *Yessenow v. Exec. Risk Indem., Inc.*, 2011 IL App (1st) 102920 (Ill. App. 2011).  Upon

information and belief, the Excess Insurance Companies were aware of these decisions when they denied coverage and sued Daileader in the Declaratory Judgment Action.

93.     Under applicable law, the Excess Insurance Companies bear the burden of proving that the "Bankruptcy/Insolvency Exclusion" applies to the Trustees' Claims.  That burden of proof necessarily includes demonstrating that no laws preclude or invalidate the "Bankruptcy/Insolvency Exclusion."  The Excess Insurance Companies cannot meet that burden because the Bankruptcy/Insolvency Exclusion is invalid and unenforceable under Sections 365(e)(1) and 541(c)(1) of the U.S. Bankruptcy Code.

94.     The "Bankruptcy/Insolvency Exclusion" is invalid and unenforceable under Section 365(e)(1) of the United States Bankruptcy Code because it is an *ipso facto* clause – that is, a provision in an executory contract that provides for termination or modification of the contract based on the filing of a bankruptcy petition or the financial condition of the debtor. Section 365(e)(1) of the Bankruptcy Code expressly prohibits such contract provisions.

95.     Section 365(e)(1) states:

> (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on-
>
>> (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
>>
>> (B) the commencement of a case under this title; or
>>
>> (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

96.     The Bankruptcy/Insolvency Exclusion is invalid and unenforceable under Section 365(e)(1) because, at the time the bankruptcy petition was filed, the Excess Policies were

executory contracts and the Bankruptcy/Insolvency Exclusion is conditioned on "the insolvency or financial condition of the debtor" or "the commencement of a case under" the Bankruptcy Code. *See* 11 U.S.C. § 365(e)(1); *see also Cmty. Mem. Hosp.*, 2019 WL 3296994, at *3-5.

97.     The "Bankruptcy/Insolvency Exclusion" also is invalid and unenforceable under Section 541(c)(1) of the United States Bankruptcy Code. *See* 11 U.S.C. § 541(c)(1).

98.     Section 541(c)(1) states:

> (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
> > (A) that restricts or conditions transfer of such interest by the debtor; or
> >
> > (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

99.     The Bankruptcy/Insolvency Exclusion is invalid and unenforceable under Section 541(c)(1) because the Debtors have an interest in the Excess Policies and the Bankruptcy/Insolvency Exclusion "is conditioned on the insolvency or financial condition of the debtor [or] on the commencement of a case under" the Bankruptcy Code.  11 U.S.C. § 541(c)(1); *see also Yessenow*, 2011 IL App (1st) 102920, ¶¶ 17-27.

100.     Despite the foregoing, the Excess Insurance Companies have repudiated their obligation to defend Daileader or make their policy limits available to resolve the Trustee's Claims.

101.     The Excess Insurance Companies' failures to make their policy limits available following the Trustee's June 28, 2021 demand to resolve the Trustee's claims resulted in the

filing of the complaints against Daileader in the Adversary Proceedings, thus exposing Daileader to potential liability in excess of the policy limits of the Excess Policies.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment Against All Defendants)

102.     Daileader repeats and realleges paragraphs 1 through 101 of the Amended Complaint as if fully set forth herein.

103.     Pursuant to 28 U.S.C. § 2201, Daileader seeks declaratory judgment for the purpose of determining questions of actual controversy between the parties regarding the Excess Policies.

104.     Daileader is an Insured under the Excess Policies.

105.     The Trustee's Claims trigger the Excess Insurance Companies' coverage obligations.

106.     The Excess Insurance Companies have breached their obligations under the Excess Policies by failing to honor or by disputing their coverage obligations under the Excess Policies with respect to the Trustee's Claims.

107.     Daileader is entitled to a declaratory judgment by this Court of his rights and the obligations of Excess Insurance Companies under the Excess Policies with respect to the Trustee's Claims.

108.     An actual and justiciable controversy has arisen between Daileader and the Excess Insurance Companies as to the meaning and application the Excess Policies, including: (1) whether the so-called "Bankruptcy/Insolvency Exclusion" precludes coverage for the Trustee's Claims; and (2) whether the "Bankruptcy/Insolvency Exclusion" is void and unenforceable under Sections 365(e)(1) and 541(c)(1) of the United States Bankruptcy Code.

109.    By reason of the foregoing, an actual and justiciable controversy exists between Daileader and the Excess Insurance Companies regarding the Excess Insurance Companies' obligations to cover the Trustee's Claims.

110.    Daileader thus seeks a judicial determination by this Court of Excess Insurance Companies' obligations to cover him for the Trustee's Claims.

111.    Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

**SECOND CAUSE OF ACTION**
**(Breach of Contract Against All Defendants)**

112.    Daileader repeats and realleges paragraphs 1 through 111 of the Amended Complaint as if fully set forth herein.

113.    Under the terms of the Excess Policies, the Excess Insurance Companies have a contractual obligation to provide insurance coverage to Daileader for the Trustee's Claims.

114.    Notwithstanding this obligation, the Excess Insurance Companies, by denying coverage for the Trustee's Claims, and by refusing to accept coverage without limitation or reservation, have violated their obligations to Daileader and therefore breached the Excess Policies.

115.    Daileader has satisfied all obligations currently owing under the Excess Policies and has complied with all conditions necessary for coverage under the Excess Policies.

116.    The Excess Insurance Companies' breaches, actions, and conduct described above constitute a breach of contract.

117.    As a direct and proximate result of the Excess Insurance Companies' breach of contract, the Excess Insurance Companies are liable to Daileader for damages, the exact amount

to be proven at trial, including but not limited to, compensatory and consequential damages, attorneys' fees and costs, and pre- and post-judgment interest.

**THIRD CAUSE OF ACTION**
**(Bad Faith Coverage Denial – Breach of the Implied Covenant of Good**
**Faith and Fair Dealing Under South Carolina Law Against All Defendants)**

118.   Daileader repeats and realleges paragraphs 1 through 117 of the Amended Complaint as if fully set forth herein.

119.   By wrongfully denying insurance coverage based upon frivolous arguments and by denying coverage simply in furtherance of their own financial interests and in detriment to Daileader's interests, the Excess Insurance Companies have breached the implied covenant of good faith and fair dealing inherent in the Excess Policies and have refused to pay benefits due under the Excess Policies in bad faith.

120.   The acts alleged against the Excess Insurance Companies were unreasonable and constituted bad faith and breaches of the duty of good faith and fair dealing implied into the Excess Policies.

121.   These acts include but are not limited to the following:

- Denying their duties to defend Daileader when the law clearly entitles Daileader to a defense if any of the allegations of the Trustee's Claims or Adversary Proceedings create even the possibility of coverage under the Excess Policies.

- Denying their duties to defend Daileader after the primary insurance company, Landmark, has agreed to and has been defending Daileader in the Adversary Proceedings.

- Denying their duties to defend Daileader despite acknowledging that the Trustee's Claims trigger coverage under the Excess Policies.

- Failing to make their policy limits available following the June 28 demand by the Trustee to resolve the Trustee's claims, which failure resulted in the filing of the Adversary Proceedings against Daileader, thus exposing

Daileader to potential liability in excess of the policy limits of the Excess Policies.

- Suing Daileader in the Declaratory Judgment Action, just when Landmark's Primary Policy was about to exhaust, at a critical stage in the Adversary Proceedings, in a forum unconnected to either the sale of the Excess Policies, the Bankruptcy Cases, or the Adversary Proceedings.

- Taking unreasonable coverage positions that no reasonable insurance company would take, particularly with respect to the duty to defend.

- Failing to withdraw their denial of the duty to defend after Daileader's defense counsel advised that Daileader's defense would be irrevocably prejudiced in light of the Excess Insurance Companies' coverage denial and the critical stage of the Adversary Proceedings.

122.   The acts taken by the Excess Insurance Companies were willful and in reckless and gross disregard of Daileader's rights.

123.   Daileader has been damaged by the Excess Insurance Companies' bad faith and breaches of the implied covenant of good faith and fair dealing, including that the Excess Insurance Companies' refusal to make their policy limits available following the Trustee's June 28, 2021 demand to resolve the Trustee's claims resulted in the filing of the complaints in the Adversary Proceedings, thus exposing Daileader to potential liability in excess of the policy limits of the Excess Policies.

124.   As a direct and proximate result of the Excess Insurance Companies' bad faith and breaches of the duty of good faith and fair dealing, the Excess Insurance Companies are liable to Daileader for damages, the exact amount to be proven at trial, including but not limited to, compensatory and consequential damages, punitive damages, attorneys' fees and costs, and pre- and post-judgment interest.

## FOURTH CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing Under New York Law Against Syndicate 1861)

125.    Daileader repeats and realleges paragraphs 1 through 124 of the Amended Complaint as if fully set forth herein.

126.    By wrongfully denying insurance coverage based upon frivolous arguments and by denying coverage simply in furtherance of its own financial interests and in detriment to Daileader's interests, Syndicate 1861 has breached the implied covenant of good faith and fair dealing inherent in the Excess Policies.

127.    The acts alleged against Syndicate 1861 were unreasonable and constituted breaches of the duty of good faith and fair dealing implied into the Excess Policies.

128.    These acts include but are not limited to the following:

- Denying the duty to defend Daileader when the law clearly entitles Daileader to a defense if any of the allegations of the Trustee's Claims or Adversary Proceedings create even the possibility of coverage under the Excess Policies.

- Denying the duty to defend Daileader after the primary insurance company, Landmark, has agreed to and has been defending Daileader in the Adversary Proceedings.

- Denying the duty to defend Daileader despite acknowledging that the Trustee's Claims trigger coverage under the Excess Policies.

- Failing to make policy limits available following the June 28 demand by the Trustee to resolve the Trustee's claims, which failure resulted in the filing of the adversary proceedings against Daileader, thus exposing Daileader to potential liability in excess of the policy limits of the Excess Policies.

- Suing Daileader in the Declaratory Judgment Action, just when Landmark's Primary Policy was about to exhaust, at a critical stage in the Adversary Proceedings, in a forum unconnected to either the sale of the Excess Policies, the Bankruptcy Cases, or the Adversary Proceedings.

- Taking unreasonable coverage positions that no reasonable insurance company would take, particularly with respect to the duty to defend.

- Failing to withdraw its denial of the duty to defend after Daileader's defense counsel advised that Daileader's defense would be irrevocably prejudiced in light of the Excess Insurance Companies' coverage denial and the critical stage of the Adversary Proceedings.

129.    The acts taken by Syndicate 1861 were willful and in reckless and gross disregard of Daileader's rights.

130.    Daileader has been damaged by Syndicate 1861's breach of the implied covenant of good faith and fair dealing, including that Syndicate 1861's refusal to make its policy limits available following the Trustee's June 28, 2021 demand to resolve the Trustee's claims resulted in the filing of the complaints in the Adversary Proceedings, thus exposing Daileader to potential liability in excess of the policy limits of the Excess Policies.

131.    As a direct and proximate result of Syndicate 1861's breaches of the duty of good faith and fair dealing, Syndicate 1861 is liable to Daileader for damages, the exact amount to be proven at trial, including but not limited to, compensatory and consequential damages, punitive damages, attorneys' fees and costs, and pre- and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**(Attorneys' Fees Against Syndicate 1861)**

132.    Daileader repeats and realleges Paragraphs 1 through 131 of the Amended Complaint as if fully set forth herein.

133.    Under the terms of the Syndicate 1861 Policy, Syndicate 1861 has a contractual obligation to defend and indemnify Daileader for the Trustee's Claims.

134.    Notwithstanding this obligation, Syndicate 1861 denied coverage and commenced an action against Daileader seeking declaratory judgment in an effort to free itself from its policy obligations to defend and indemnify Daileader**.**

135.     The Syndicate 1861 Policy contains a provision that states: "All matters arising

hereunder including questions related to the validity[,] interpretation, performance and

enforcement of this Policy shall be determined in accordance with the law and practice of the

State of New York notwithstanding New York's conflict of law rules."

136.     By reason of the foregoing, Daileader has been placed in a defensive posture by

Syndicate 1861 and is entitled, by operation of applicable New York law, to recover his

attorneys' fees, costs, disbursements and expenses incurred in this action.  *See Mighty Midgets,*

*Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12 (1979).

## RELIEF REQUESTED

**WHEREFORE**, Daileader respectfully requests judgment as follows:

1.     With respect to the First Cause of Action:

    (a)     Declaring that, upon attachment, the Trustee's Claims are covered by the
Excess Policies;

    (b)     Declaring that, upon attachment, the Excess Companies have a duty to
defend Daileader against the Trustee's Claims;

    (c)     Declaring that, upon attachment, the Excess Companies have a duty to
indemnify Daileader against the Trustee's Claims;

    (d)     Declaring that the Excess Insurance Companies cannot establish that the
"Bankruptcy/Insolvency Exclusion" in the Primary Policy precludes
coverage for the Trustee's Claims;

    (e)     Declaring that the "Bankruptcy/Insolvency Exclusion" is void and
unenforceable under Section 365(e)(1) of the United States Bankruptcy
Code;

    (f)     Declaring that the "Bankruptcy/Insolvency Exclusion" is void and
unenforceable under Section 541(c)(1) of the United States Bankruptcy
Code;

    (g)     Granting Daileader his attorneys' fees, expenses, and costs incurred in this
action; and

    (h)     Granting Daileader such other and further relief as the Court may deem just and proper.

2.      With respect to the Second, Third, Fourth, and Fifth Causes of Action:

    (a)     A judgment awarding money damages, including but not limited to, compensatory, consequential, and punitive damages, in an amount to be determined at trial, and attorneys' fees, expenses, and costs incurred in this action, plus pre-judgment and post-judgment interest;

    (b)     Granting Daileader such other and further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Daileader demands trial by jury on all issues so triable.

Dated:  May 18, 2022         Respectfully Submitted,

**WYCHE, P.A.**

By: *s/Rita Bolt Barker*
    Rita Bolt Barker (U.S.D.C. I.D. No. 10566)
    200 East Broad Street, Suite 400
    Greenville, SC 29601
    Telephone:  864-242-8200
    Facsimile: 864-235-8900
    E-mail: rbarker@wyche.com

    *Attorneys for Defendant Timothy Daileader*