IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

Timothy Daileader,          )
          )
          Plaintiff,      )    C.A. No. 7:22-916-HMH
          )
   vs.         )
          )    **OPINION & ORDER**
Certain Underwriters at Lloyd's    )
London – Syndicate 1861, Subscribing to   )
Policy No. ANV122398A;    )
Crum & Forster Specialty Insurance   )
Company; Certain Underwriters at Lloyd's   )
Subscribing to Policy Number    )
D0H00746111; and StarStone Specialty   )
Insurance Company,    )
          )
         Defendants.   )

This matter is before the court on the Defendants' motion to dismiss pursuant to the first-to-file rule or, in the alternative, to stay or transfer this action to the United States District Court for the Southern District of New York. Further, the Defendants' move to dismiss the Plaintiff's claim for breach of contract and breach of the implied covenant of good faith and fair dealing pursuant to Federal Rule of Civil Procedure 12(b)(1). After thorough review, the court denies Defendants' motion to dismiss and grants Defendants' motion to transfer venue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the Amended Complaint, Plaintiff Timothy Daileader ("Daileader") seeks a declaration whether certain policies of insurance issued by the Defendants provide coverage for claims against him pending in United States Bankruptcy Court and further asserts causes of action for breach of contract and breach of implied covenants of good faith and fair dealing. In

(Am. Compl., generally, ECF No. 15.)  In addition, Daileader alleges claims against Certain Underwriters at Lloyd's London – Syndicate 1861 for breach of implied covenant of good faith and fair dealing and attorney's fees under New York law.  (Id., generally, ECF No. 15.) Daileader, a New York resident, was a manager or sole director of various entities, Oaktree Medical Centre, LLC; Oaktree Medical Centre PC; and Labsource, LLC, collectively referred to as the Oaktree Entities.  (Id. ¶ 7, ECF No. 15.)  The Oaktree Entities provided pain management healthcare services in North Carolina, Tennessee, and South Carolina.  (Id. ¶ 33).  The Defendants, Certain Underwriters at Lloyd's London – Syndicate 1861 ("Syndicate"); Crum & Forster Specialty Insurance Company ("Crum & Forster"); Certain Underwriters at Lloyd's ("Lloyd's"); and StarStone Specialty Insurance Company ("StarStone") (collectively, "Excess Insurers") are all Excess Insurers.  The Excess Insurers each issued excess insurance policies ("Excess Policies") to the Oaktree Entities that included directors and officers coverage ("D&O").  (Id. ¶¶ 16-22, ECF No. 15.)  The primary policy was issued by Landmark American Insurance Company ("Landmark").  (Id. ¶ 17, ECF No. 15.)

Currently, there are Underlying Actions pending in the United States Bankruptcy Court for the District of South Carolina.  The Amended Complaint contends that the Oaktree Entities' lenders, through Fidus Investment Corporation as collateral agent of the lenders, appointed Daileader manager as a result of the Oaktree Entities' default on certain loans.  (Am. Compl. ¶¶ 34-35, ECF No. 15.)  The various debtors filed Chapter 7 bankruptcy petitions that are currently pending in the United States Bankruptcy Court for the District of South Carolina.  19-05154-hb,

19-05155-hb, and 19-05161-hb.[1]  (Id. ¶¶ 37-38, ECF No. 15.)   In addition, the Chapter 7 trustee

has filed adversary proceedings, which have been consolidated against several parties, including

Daileader.  21-80057-hb, 21-80058-hb and 21-80059-hb.  (Id. ¶ 46, ECF No. 15.)   To date,

Daileader has been defended in the Underlying Actions by Landmark under the Primary Policy.

(Id. ¶¶ 55-56, ECF No. 15.)  However, Daileader represents that the Landmark policy limits

have been exhausted.  (Resp. Opp'n 7, ECF No. 21.)

On February 1, 2022, Syndicate, Crum & Forster, and StarStone filed a complaint for

declaratory relief in New York state court against Daileader and Aaron Kibbey ("Kibbey"),[2]

Certain Underwriters at Lloyd's London – Syndicate 1861, Subscribing to Policy No.

ANV122398A, et al v. Timothy Daileader, et al, No. 650484/2022, New York Supreme Court,

New York County (the "New York Action").  (Memo Supp. Mot. Dismiss 3, ECF No. 17-1.)

On February 18, 2022, the Excess Insurers filed an Amended Complaint, seeking a declaration

that coverage is unavailable to Daileader and Kibbey under the Excess Policies for claims

asserted in the Underlying Actions.  (Id. Ex. A (New York Action Am. Compl.), ECF No. 17-2.)

On March 11, 2022, Daileader removed the New York Action to the Southern District of New

York, alleging that the federal court has subject matter jurisdiction based on bankruptcy

jurisdiction under 28 U.S.C. 1334(b) and federal question jurisdiction under 28 U.S.C. 1331.

(Id. at 4, ECF No. 17-1.)  Syndicate, Crum & Forster, and StarStone filed a motion to remand

---

[1] Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (internal citation and quotation omitted).

[2] Kibbey was the Chief Restructing Officer of Oaktree Medical Centre, PC.  (Am. Compl. ¶ 47, ECF No. 15.)

the case to New York state court on April 11, 2022, and this motion to remand is currently

pending. (Id., ECF No. 17-1.)  On April 22, 2022, in the New York action, Daileader filed an

answer to the amended complaint and counterclaims against the Excess Insurers for declaratory

judgment, breach of contract, and breach of the implied covenant of good faith and fair dealing.

(Id., ECF No. 17-1.)

Daileader filed the complaint in the instant action on March 18, 2022, asserting claims

for declaratory judgment, breach of contract, and breach of the implied covenant of good faith

and fair dealing against the Excess Insurers  (Compl., generally, ECF No. 1.)  On May 18, 2022,

Daileader filed an amended complaint asserting the same claims and adding claims against

Syndicate for breach of the implied covenant of good faith and fair dealing and for attorneys'

fees under New York law.  (Am. Compl., generally, ECF No. 15.)  Defendants filed the instant

motion to dismiss the amended complaint, or in the alternative, transfer venue to the Southern

District of New York on June 1, 2022.  (Mot. Dismiss, ECF No. 17.)  On June 7, 2022,

Daileader filed a motion for a preliminary injunction.  (Mot. Prelim. Inj., ECF No. 18.)  On June

15, 2022, Daileader filed a response in opposition to the Defendants' motion to dismiss.  (Resp.

Opp'n Mot. Dismiss, ECF No. 21.)  Defendants filed a reply on June 22, 2022.  (Reply, ECF

No. 23.)  The motion to dismiss is now ripe for consideration.

## II.  DISCUSSION OF THE LAW

The Excess Insurers move to dismiss, or in the alternative, transfer the instant action

pursuant to the first-to-file rule.  (Mot. Dismiss, generally, ECF No. 17.)  "Ordinarily, when

multiple suits are filed in different Federal courts upon the same factual issues, the first or prior

action is permitted to proceed to the exclusion of another subsequently filed."  Allied-General

Nuclear Servs. v. Commonwealth Edison Co., 675 F.2d 610, 611 n.1 (4th Cir. 1982) (citation

omitted); see also Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 n.2 (4th Cir.

1974)("[A]s a principal of sound judicial administration, the first suit should have priority,

absent the showing of balance of convenience in favor of the second action.")  (internal

quotation marks and citation omitted).  "[C]ourts consider the following three factors in

determining whether the first-filed rule applies: '(1) the chronology of the filings[,] (2) the

similarity of the parties involved, and (3) the similarity of the issues being raised.'"  PTA-FLA,

Inc. v. ZTE Corp., C/A No. 3:12-cv-02616-CMC, 2015 WL 13593694, at *13 (D.S.C. July 27,

2015) (unpublished) (quoting Remington Arms Co. v. Alliant Techsystems, Inc.,

No. 1:03CV1051, 2004 WL 444574, at *2 (M.D.N.C. Feb. 25, 2004) (unpublished)).  Pursuant

to the first-to-file rule, the "district court has the discretion to dismiss, stay, or transfer a later-

filed lawsuit in deference to the first filed action."  Ace Prop. & Cas. Ins. Co. v. Specialty

Logging, LLC, No. 1:14-cv-00944-JMC, 2015 WL 1422181, at *2 (D.S.C. Mar. 27, 2015)

(unpublished) (internal citation and quotation omitted).  "When a state action is removed to

federal court, for first-to-file purposes, the state court filing date is the date used."  Affinity

Memory & Micro, Inc. v. K & Q Enterprises, Inc., 20 F. Supp. 2d 948, 954 n.10 (E.D. Va. 1998)

(citing 800-Flowers v. Intercontinental Florist, Inc., 860 F. Supp. 128, 131 (S.D.N.Y. 1994)).

        "To apply the First-Filed rule, the actions being assessed need not be identical if there is

substantial overlap with respect to the issues and parties."  Kendus v. USPack Servs. LLC, No.

CV SAG-19-00496, 2020 WL 1158570, at *2 (D. Md. Mar. 10, 2020) (unpublished) (internal

citation and quotation omitted).  "[M]ultiple courts have applied the first to file rule even where

different actions include or omit additional defendants."  Blackwell v. Midland Credit Mgmt.,

Inc., No. 2:18-CV-2205-RMG, 2018 WL 4963166, at *3 (D.S.C. Oct. 15, 2018) (citing Kohn

Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc., 787 F.3d 1237, 1240 (9th Cir. 2015)).

("[T]he omission of [a defendant] from the present action does not defeat application of the

first-to-file rule."); Bewley v. CVS Health Corp., No. C17-802RSL, 2017 WL 5158443, at *2

(W.D. Wash. Nov. 7, 2017) ("[T]he presence of one additional defendant, however, does not

change the fact that the parties on the whole are substantially similar."); Rudolph & Me, Inc. v.

Ornament Cent., LLC, No. 8:11-CV-670-T-33EAJ, 2011 WL 3919711 (M.D. Fla. 2011)

(applying the first to file rule where second action had "six additional defendants" with four of

those entities having either been acquired by or shared "an interest" with the other defendant);

Vertical Computer Sys., Inc. v. Interwoven, Inc., No. 2:10-CV-490, 2011 WL 13141016, at *2

(E.D. Tex. 2011) ("[A] party cannot circumvent the policies underlying the first-to-file rule by

merely tacking on an additional defendant in a later, duplicative action.").

  Here, there is undisputed and substantial overlap between the New York action, the first

filed action, and the instant case.  Both cases assert declaratory judgment actions seeking

declarations regarding the scope of coverage under the Excess Policies.  Further, the lack of

complete identity of the parties does not alter this fact.  Lloyd's is the only insurer that is not a

party to the New York Action and Kibbey is not a party to the instant action.  Further, Daileader

removed the New York Action to federal court in the New York action and filed an answer and

counterclaim asserting affirmative claims for breach of contract and breach of contract and

breach of the implied covenant of good faith and fair dealing.  This identity of issues risks

directly conflicting rulings. Therefore, the first filed rule controls in this case unless an exception applies.[3]

"The Fourth Circuit recognizes an 'exception to the first-filed rule when the balance of convenience favors the second action.'" CompuZone, Inc. v. Top Tobacco, L.P., No. 3:14-cv-04790-CMC, 2015 WL 12804523, at *4 (D.S.C. May 5, 2015) (unpublished) (quoting Learning Network, Inc. v. Discovery Commc'ns, Inc., No. 01-1202, 2001 WL 627618, at *4 (4th Cir. Jun. 7, 2001) (unpublished)). The first-filed rule exception "effectively mirrors the court's authority to transfer an action under 28 U.S.C. 1404(a)." Id. (citing Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 362 (W.D.N.C. 2003)).

Daileader alleges that the balance of convenience favors the instant action and that the Excess Insurers engaged in procedural fencing in filing the New York action. Specifically, Daileader argues that the Excess Insurers filed the New York action in bad faith in a forum unconnected to the bankruptcy action and the Excess policies. (Resp. Opp'n Mot. Dismiss 6,

---

[3] The pendency of a motion to remand in the New York action does not impact the application of the first filed rule in this case because, as it stands, the New York action is a pending, duplicative action in federal court that was filed first. See e.g., Williams v. Fred's Stores of Tennessee, Inc., No. 1:17-CV-1703-SCJ-JCF, 2017 WL 11621746, at *3 (N.D. Ga. June 29, 2017) (unpublished) ("'There is no federal law or statute, or judicial decision[ ] that requires this court to decide a motion to remand before it decides a motion to transfer.' As the case is due to be transferred pursuant to the first-filed rule, the court in Alabama can determine the proper disposition of Plaintiffs' motion to remand." (quoting Gould v. National Life Ins. Co., 990 F. Supp. 1354, 1362 (M.D. Ala. 1998) (unpublished) (granting motion to transfer without ruling on motion to remand)); Texas Health Mgmt. LLC v. HealthSpring Life & Health Ins. Co., Inc., 380 F. Supp. 3d 580, 588 (E.D. Tex. 2019) ("[T]he second-filed court considers only the potential overlap between the two cases and no other matters-such as jurisdictional disputes.").

ECF No. 21.)  "Typically, the burden is on the movant to show that transfer to another forum is proper, however, the first filed rule shifts this burden to the party seeking adjudication in the second forum."  MVP Grp. Int'l, Inc. v. Smith Mountain Indus., Inc., No. 2:11-CV-2608, 2012 WL 425010, at *2 (D.S.C. Feb. 9, 2012) (unpublished) (citing Rite Way Crack Repair, LLC v. Guardian Crack Repair, LLC, No. 09–1207, 2009 WL 2923085, at *3-4 (D. Md. Sept.10, 2009) (unpublished); Motley Rice, LLC v. Baldwin & Baldwin, LLP, 518 F. Supp. 2d 688, 697 (D.S.C. 2007)).  Therefore, Daileader has the burden of proving that the balance of convenience favors the instant action, the second filed action.  After review, the court, in its discretion, finds that transfer to the United States District Court for the Southern District of New York is proper.

The balance of convenience generally requires consideration of the factors set forth in 28 U.S.C. § 1404(a). PTA-FLA, Inc., 2015 WL 13593694 at *13 (citing Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 362 (W.D.N.C. 2003).  Section 1404(a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  Whether a case should be transferred under § 1404(a) rests within the sound discretion of the court.  In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984).  A motion to transfer venue requires the court to engage in an "individualized case-by-case consideration of convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  "District courts within this circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."  Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th

Cir. 2015).  These factors have also been listed as follows: "(1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice." Nexsen Pruet, LLC v. Westport Ins. Corp., C/A No. 3:10-895-JFA, 2010 WL 3169378, at *2 (D.S.C. Aug.5, 2010) (unpublished) (citations omitted); Victaulic Co. v. E. Indus. Supplies, Inc., Civil Case No. 6:13-01939, 2013 WL 6388761, at *3 (D.S.C. Dec. 6, 2013) (unpublished).

"As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." Plumbing Servs., Inc., 791 F.3d at 444  (internal quotation marks omitted).  However, "[t]he 'first-filed' rule embodies the notion that the plaintiff who is first to commence litigation should have his or her choice of venue." Wyler-Wittenberg v. MetLife Home Loans, Inc., 899 F. Supp. 2d, 235, 247 (E.D.N.Y. 2012); see also Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001) ("The first-filed rule seeks to advance judicial economy, protect a plaintiff's choice of forum and avoid duplicative litigation.").  The New York action is plainly the first filed action.  Further, Daileader did not file the instant action in his home forum.   In fact, Daileader is a resident of New York, where the first filed action is pending.  (Resp. Opp'n 12, ECF No. 21.)  None of the Defendants have a home forum in South Carolina.  Daileader contends that this factor favors the second filed action because he is the "natural" plaintiff, since his claims include claims seeking affirmative relief as opposed to solely declaratory judgment claims.  (Id. 20, ECF No. 21.)  Daileader asserts

claims for declaratory judgment and claims for breach of contract and breach of the implied

covenant of good faith and fair dealing.

"Declaratory judgment actions are proper when there is a potential lawsuit."  Learning

Network, Inc., 2001 WL 627618, at *3; see also United Capitol Ins. v. Kapiloff, 155 F.3d 488,

494 (4th Cir. 1998) ("The declaratory judgment action allows the uncertain party to gain relief

from the insecurity caused by a potential suit waiting in the wings.").

> The considerations affecting transfer to or dismissal in favor of another forum do
> not change simply because the first-filed action is a declaratory action. When the
> declaratory action can resolve the various legal relations in dispute and afford
> relief from the controversy that gave rise to the proceeding, and absent sound
> reason for a change of forum, a first-filed declaratory action is entitled to
> precedence as against a later-filed action [seeking affirmative relief].

Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 938 (Fed. Cir. 1993), abrogated on other

grounds by, Wilton v. Seven Falls Co., 515 U.S. 277 (1995).  Therefore, this factor does not

weigh in favor of the instant action.

In addition, Daileader alleges that there is no evidence that any unwilling witnesses

could be compelled to testify in New York.  (Id., ECF No. 21.)  However, Daileader does not

present any evidence of witnesses who are unwilling to testify in New York.  (Resp. Opp'n 18,

ECF No. 21.)  There is no allegation that any witnesses relevant to the insurance issues in this

case are actually located in South Carolina.  Moreover, Daileader does not contest the Excess

Insurers' representation that to the extent any witnesses are required, the majority are located in

New York and New Jersey.  (Mem. Supp. Mot. Dismiss 10, ECF No. 17-1.)

Further, the Syndicate Policy is governed by New York law and Daileader argues that

the Syndicate Policy is the next policy triggered upon the exhaustion of the Landmark policy.

(Resp. Opp'n 10, 12 ECF No. 21.)  Generally, "it is preferable to have cases decided by courts familiar with the substantive law to be applied."  Gen. Foam Plastics Corp. v. Kraemer Export Corp., 806 F. Supp. 88, 90 (E.D. Va. 1992) (citations omitted).  Further, Daileader alleges that two of the Excess Policies are subject to interpretation under South Carolina law.  (Resp. Opp'n 12?, ECF No. 21.)  Therefore, this factor is does not favor one venue over the other.

    With respect to access to proof, these are declaratory judgment actions involving insurance policy interpretations and related claims, that "largely if not exclusively" involve digital proof.  (Mem. Supp. Mot. Dismiss 10, ECF No. 17-1.)  Daileader alleges that the relevant documents are located in or close to South Carolina because of the pendency of the Underlying Actions.  (Resp. Opp'n 22, ECF No. 21.)  However, Daileader "does not provide any specificity regarding the location of potential witnesses or relevant documents in this forum to accord this factor much weight in its favor."  Victaulic, 2013 WL 6388761, at *4 .  In addition, there is no scene that a jury would need to view in this case.

    The interest in having local controversies decided at home is a neutral factor in this case. This factor is greatly diminished by the fact that New York is Daileader's home forum.  Further, none of the Excess Insurers' home forum is South Carolina.  Telepharmacy Sols., Inc. v. Pickpoint Corp., 238 F. Supp. 2d 741, 743 (E.D. Va. 2003) ("The factor regarding having local controversies decided at home is inapplicable, as Virginia is not a home forum for either party, and as the Virginia connection is minimal."); Vape Guys, Inc. v. Vape Guys Distribution, Inc., No. 3:19CV298, 2020 WL 1016443, at *20 (E.D. Va. Mar. 2, 2020) (citation omitted) ("Plaintiff has filed this case in its home forum meaning that the 'interest in having local controversies decided at home,' weighs against transfer.")  Further, the Excess Insurers

represent, and Daileader did not contest the representation, that Daileader's actions with respect to the Oaktree Entities occurred in New York and that there is no evidence that he conducted any activities related his role as manager for the Oaktree Entities in South Carolina.  (Mem. Supp. Mot. Dismiss 11, ECF No. 17-1.) ("Daileader presumably performed his managerial and director duties from his residence in New York and the Trustee's claims against Daileader arise from alleged wrongful conduct undertaken while working on matters involving corporate restructuring and refinancing in New York"); (Reply 3, ECF No. 23.)

However, South Carolina also has an interest in and connection to this case in light of the pendency of the bankruptcy action and the adversary proceedings in the bankruptcy court in this district.  The Oaktree Entities were located in South Carolina, North Carolina, and Tennessee.  (Resp. Opp'n 6, 23, ECF No. 21.)  Daileader was a manager for the Oaktree Entities, and the Trustee in the adversary proceedings alleges breaches of fiduciary duties, negligence, and fraud by Daileader.  (Id. 8, ECF No. 21.)  McGillis/Eckman Invs.-Billings, LLC v. Sportsman's Warehouse, Inc., No. CV-10-26-BLG-RFC, 2010 WL 3153416, at *1 (D. Mont. Aug. 9, 2010) ("Because this case is related to a bankruptcy case [pending in another forum], Montana's interest in having local controversies determined locally is diminished.").  Therefore, this factor is neutral.

Further, the interest of justice does not favor either jurisdiction.  There are numerous factors that the court may consider in weighing whether the interests of justice warrant a transfer, including "[t]he ease of access to sources of proof, the availability of compulsory process, the costs and practical problems of litigation, and the state of the respective trial calendars" of the districts being considered.  Fairchild Semiconductor Corp. v. Nintendo Co.,

810 F. Supp. 173, 175 (D.S.C. 1992).  Daileader has failed to present any evidence regarding the costs of litigation.  In light of the fact that Daileader is a New York resident and a number of witnesses are located closer to New York, the costs of litigating in New York would likely be less than in South Carolina.  However, Daileader contends that the pendency of the bankruptcy action and adversary proceedings in bankruptcy court in this forum would lessen the cost burden.  (Resp. Opp'n 17-18, ECF No. 21.)  Therefore, this factor favors neither venue.

Further, Daileader incredibly argues that the state of the respective trial calenders favors the District of South Carolina because it has "far fewer" cases than the Southern District of New York.  (Resp. Opp'n 22-23, ECF No. 21.)  The court takes judicial notice of the fact that the Southern District of New York is a much larger district with 44 district court judges. https://www.nysd.uscourts.gov/judges [4]  The District of South Carolina has 15 district judges. https://www.scd.uscourts.gov/judges  There is no evidence that the respective trial calendars weigh in favor of the District of South Carolina.

In addition, Daileader argues the Excess Insurers are seeking to avoid coverage based on the bankruptcy/insolvency exclusion in the Excess Policies, which Daileader argues is void under federal bankruptcy law, and that this weighs in favor of the instant action because the bankruptcy action is pending in federal bankruptcy court in South Carolina.  (Resp. Opp'n 28-29, ECF No. 21.)  This factor favors neither venue.  The same law applies in deciding this issue whether the case is heard in the Southern District of New York or the District of South Carolina.

---

[4] "The Court may take judicial notice sua sponte, or on motion of the parties. Numerous district courts have held that judicial notice of information contained in state or federal governmental websites is proper."  Williams v. Universal Ins. Co., No. 4:13-CV-3518-PMD, 2014 WL 12621154, at *4 (D.S.C. Oct. 9, 2014) (unpublished) (citations omitted).

Further, the court must consider "public-interest factors of systemic integrity and fairness." Stewart Org., 487 U.S. at 30.  Systemic integrity and fairness weigh in favor of the first filed action.  Daileader contends that "the courts in this District can resolve this dispute expediently and efficiently, since they already have familiarity with the facts, circumstances, and issues underlying the Oaktree bankruptcy cases and the Adversary Proceedings, as well as the relevant insurance policies."  (Resp. Opp'n 23, ECF No. 21.)  This is patently untrue.  This court has no familiarity with any of the facts, circumstances, and issues in this case as the Underlying Actions are pending in the bankruptcy court, not before the district court.  The simple fact that the Underlying Actions are pending in the bankruptcy court does not impute knowledge to the district court.  See e.g., Blue Cross & Blue Shield of N. Carolina v. Jemsek Clinic, P.A., 506 B.R. 694, 699 (W.D.N.C. 2014) (denying motion to withdraw reference to bankruptcy court in part because "[t]he bankruptcy judge [was] familiar with the parties, the factual makeup of the case, and the legal and factual issues relevant to the remaining claims.").

In addition, there is no evidence that the Excess Insurers engaged in a preemptive strike in filing the New York action.  (Resp. Opp'n 26, ECF No. 21.)  This is not a situation where Daileader had informed the Excess Insurers that he was imminently planning to file suit and provided a copy of a draft complaint. Simply requesting coverage under an insurance policy does not render a declaratory judgment action filed by an insurance company a preemptive strike.  Learning Network, Inc. v. Discovery Commc'ns, Inc., No. 01-1202, 2001 WL 627618, at *3 (4th Cir. Jun. 7, 2001) (unpublished) ("In some cases, there may come a point after which the potential lawsuit that may otherwise have given rise to a proper declaratory judgment action has become so certain or imminent, that the declaratory judgment action is merely an improper act

of forum shopping, or a race to the courthouse."); <u>CompuZone, Inc. v. Top Tobacco, L.P.</u>, Civil Action No. 3:14-cv-04790-CMC, 2015 WL 12804523, at *7 (D.S.C. May 5, 2015) (unpublished) (finding preemptive strike where a plaintiff in first filed action "obtained a delay in . . . litigation by offering assurances that it 'greatly respected' the category of rights at issue and needed time to investigate before providing a substantive response.  Rather than providing the promised substantive response, [alleged infringer] used the delay for a preemptive strike-filing suit immediately after [trademark owner] sent a letter asking when it might expect [alleged infringer's] promised substantive response.  Rather than serving the [complaint, alleged infringer] then attempted to use it as leverage in settlement negotiations . . . ." ).  Declaratory judgment "actions are frequently and properly initiated by insurers when there is a dispute as to the insurer's duty to defend and indemnify."  <u>NVR, Inc. v. Cincinnati Ins. Co.</u>, No. CA 0:12-3071-CMC, 2013 WL 178431, at *3 (D.S.C. Jan. 17, 2013) (unpublished).

Daileader argues that the Excess Insurers' naming Kibbey as a defendant in the New York action is evidence of procedural fencing because the Excess Insurers have not served Kibbey and only added him in an effort to destroy diversity jurisdiction.  (Resp. Opp'n 26, ECF No. 21.)  However, Daileader asserts that jurisdiction is proper in the instant action and in the New York action under 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Therefore, it is unclear to the court how allegedly adding Kibbey to destroy diversity jurisdiction is evidence of procedural fencing in this case.  (Am. Compl. ¶ 13 (citing 28 U.S.C. § 1334(b)), ECF No. 15); (Resp. Opp'n Mot. 2, ECF No. 21.)

After consideration of the above factors and a thorough review of the record in the case, the court finds Daileader has not carried his burden of showing that the balance of convenience favors the instant action.  Further, the court finds that the Excess Insurers did not engage in procedural fencing in filing the New York action.  Having found that transfer is appropriate in this case, the court declines to address the Excess Insurers' remaining arguments with respect to the motion to dismiss Daileader's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  For the same reasons, the court declines to address Daileader's motion for preliminary injunction, which is not ripe.  Based on the foregoing, the court denies Defendants' motion to dismiss without prejudice and grants Defendants' motion to transfer to the Southern District of New York pursuant to the first-to-file rule.

It is therefore

**ORDERED** that Defendants' motion to transfer, docket number 17, is granted, and this action is transferred to the Southern District of New York.  It is further

**ORDERED** that Defendants' motion to dismiss, docket number 17, denied.

**IT IS SO ORDERED.**


s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
June 23, 2022

16