UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY DAILEADER, | |
| Plaintiff, | |
| - against - | |
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON – SYNDICATE 1861, SUBSCRIBING TO POLICY NO. ANV122398A, | |
| Defendant. | |

**ORDER**

22 Civ. 5408 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this insurance coverage action, Defendant Certain Underwriters at Lloyd's London – Syndicate 1861, Subscribing to Policy No. ANV122398A ("Syndicate 1861" or "Defendant"), moves for a stay of discovery pursuant to Fed. R. Civ. P. 26(c)(1), pending resolution of its anticipated motion for summary judgment. (Dkt. No. 119) Plaintiff Timothy Daileader opposes Defendant's application. (Pltf. Opp. (Dkt. No. 120) at 5)[1]

        For the reasons stated below, Syndicate 1861's application for a stay of discovery will be granted.

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

**BACKGROUND**[2]

I.    **FACTS**

    A.    **The Parties**

Plaintiff Timothy Daileader is a "former director and manager of Oaktree Medical Center, LLC, Oaktree Medical Centre PC, and Labsource, LLC" (collectively, "Oaktree"). Daileader v. Certain Underwriters at Lloyd's London Syndicate 1861 ("Daileader I"), 670 F. Supp. 3d 12, 19 (S.D.N.Y. 2023).

Syndicate 1861 sold excess director and officer ("D&O") insurance policies to Oaktree. Id. The excess policy "follow[s] the form of Oaktree's primary D&O policy, which was issued by Landmark American Insurance Company." Id.

    B.    **Daileader's Involvement with Oaktree**

"'Oaktree was a group of affiliated companies that provided pain management healthcare services. . . . Oaktree Medical Centre PC was a pain management practice that was privately owned by a non-practicing chiropractor, Daniel McCollum. Labsource LLC was Oaktree's toxicology laboratory. Oaktree Medical Centre, LLC was Oaktree's management service organization.'" Id. at 20 (quoting First Am. Cmplt. ("FAC") (Dkt. No. 15) ¶ 33)

When Oaktree defaulted on a loan in 2018, the lenders' collateral agent – Fidus Investment Corporation – "exercised its rights under the loan agreement to remove McCollum's control over Oaktree and appoint new leadership." Id. On July 12, 2018, Fidus appointed Daileader as "sole director of Oaktree Medical Centre PC and sole manager of LabSource,

---

[2]  The factual background and procedural history of this case is set forth at length in this Court's April 20, 2023 decision denying Daileader's motion for a preliminary injunction. See Daileader v. Certain Underwriters at Lloyd's London - Syndicate 1861, 670 F. Supp. 3d 12, 19 (S.D.N.Y. 2023) ("Daileader I").  Familiarity with Daileader I is assumed.

LLC." Id. (citing Unanimous Written Consent of the Sole Stockholder of Oaktree Medical

Centre PC (Dkt. No. 79-2) at 3; Unanimous Written Consent of the Member of LabSource, LLC

(Dkt. No. 79-4) at 2)  Fidus appointed Daileader as co-manager of Oaktree Medical Centre, LLC

on December 21, 2018.  On June 20, 2019, Fidus removed McCollum as the other co-manager,

leaving Daileader as the sole manager.  Id. (citing Written Consents of the Sole Member of

Oaktree Medical Centre, LLC (Dkt. Nos. 79-6, 79-8))

C.    **The D&O Policies**

When Daileader was appointed as the sole director of Oaktree Medical Center PC

on July 12, 2018, Oaktree had a $1 million primary D&O policy issued by Landmark.  Id. (citing

Landmark Policy (Dkt. No. 43-1)).  As a condition of his appointment as director, Daileader

requested that Oaktree purchase additional D&O liability coverage.  Id.  Oaktree eventually

obtained excess policies for Oaktree directors and officers and for Oaktree amounting to a

"'tower' of $10 million in coverage."  Id. at 21 (quoting Syndicate 1861 Policy, Crum & Forster

Policy, DOH00746111 Subscribers Policy, and StarStone Policy (Dkt. Nos. 43-2 to 43-5); FAC

(Dkt. No. 15) ¶¶ 16, 19-22))  Each of the excess policies – including that of Syndicate 1861 –

"follow the form of the Landmark Policy, 'which means that they incorporate by reference [its]

terms and conditions.'"  Id. (quoting FAC (Dkt. No. 15) ¶ 23)

The Syndicate 1861 policy – the policy at issue in the instant action – "is the

'first-layer excess policy,' providing up to $1 million in coverage after the $1 million in coverage

under the Landmark Policy has been exhausted."  Id. (quoting FAC (Dkt. No. 15) ¶ 19)  The

policy provides liability coverage for Oaktree directors and officers and for Oaktree, with

directors and officers entitled to priority.  Id. (citing Landmark Policy (Dkt. No. 43-1) at 41-42,

45)  "Oaktree's insurance broker paid Syndicate 1861's agent the full premiums for the initial

policy and coverage extension on October 31, 2018 and August 12, 2019, respectively." Id.
(citing Feb. 2, 2023 ANV Global Services Email (Dkt. No. 70-3)).

Pursuant to the Syndicate 1861 Policy, "[i]t shall be the right and duty of the
Insurer to defend any Claim against any Insured for which coverage applies." (Landmark Policy
(Dkt. No. 43-1) at 14) (emphases in original)[3] "[I]f a Claim for a Wrongful Act is first made
against any Insured Person during the Policy Period and reported in accordance with [the
applicable conditions], the Insurer will pay on behalf of such Insured Person all Loss such
Insured Person is legally obligated to pay, except and to the extent that the Insured Organization
is required or permitted to indemnify such Insured Person for such Loss." (Id. at 41)

"Claim" is defined in the Policy as (1) "[a] written demand for monetary or non-
monetary relief"; or (2) "[a] civil, criminal, administrative, regulatory or arbitration proceeding,
or arbitration demand for monetary or non-monetary relief which is commenced by [r]eceipt or
service of a complaint or similar pleading." (Id. at 42 (list formatting and numbering altered))
"All Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or
in any way involving the same or related facts, circumstances, situations, transactions or events,
or the same or related series of facts, circumstances, situations, transactions or events, shall be
deemed to be a single Claim for all purposes under [the Policy]." (Id. at 15)

"Wrongful Act means any actual or alleged act, error, omission, misstatement,
misleading statement, neglect or breach of duty by [a]n Insured Person acting in his or her
capacity as such and on behalf of the Insured Organization or any matter claimed against them

---

[3]  Because the Syndicate 1861 Policy "follow[s] the form of the Landmark Policy," this Order
generally cites to the Landmark Policy when discussing the insurer's obligations under the
Syndicate 1861 Policy.

solely by reason of their status as an <u>Insured Person</u>."  (<u>Id.</u> at 43 (list numbering and formatting altered))

"<u>Loss</u> means damages, settlements, judgments (including pre- and post-judgment interest on a covered judgment) and <u>Defense Expenses</u>."  (<u>Id.</u> at 42)  "<u>Defense Expenses</u> means reasonable and necessary legal fees and expenses incurred, with the <u>Insurer</u>'s consent, by any <u>Insured</u> in defense of a <u>Claim</u>, including any appeal therefrom."  (<u>Id.</u> at 13)

The Policy contains the following Bankruptcy/Insolvency Exclusion:

The <u>Insurer</u> shall not be liable to make any payment for <u>Loss</u> under this policy in connection with any <u>Claim</u> made against any <u>Insured</u>:

1. Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, any <u>Wrongful Act</u> that is alleged to have caused, directly or indirectly, in whole or in part:

    a. The bankruptcy or insolvency of the <u>Insured Organization</u>;

    b. The <u>Insured Organization's</u> filing of a petition, or a petition being filed against the <u>Insured Organization</u> pursuant to the federal Bankruptcy Code or any similar state law;

    c. The <u>Insured Organization</u> assigning its assets for the benefit of its creditors; or

    d. By any other means seeking protection under the common or statutory law as a result of insolvency or financial impairment.

2. Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, the <u>Insured Organization</u> having sustained a financial loss due to a <u>Wrongful Act</u> by or on behalf of any <u>Insured Person</u> that actually or allegedly occurred before the date that the <u>Insured Organization</u> or other party sought protection of the <u>Insured Organization[']s</u> assets by any means. . . .

(<u>Id.</u> at 33)

### D.    <u>Oaktree's Bankruptcy Filings</u>

On September 19, 2019, all three Oaktree entities filed Chapter 7 bankruptcy petitions in the U.S. Bankruptcy Court for the Western District of North Carolina.  See <u>Daileader</u>

I, 670 F. Supp. 3d at 23.  The cases were subsequently transferred to the U.S. Bankruptcy Court

for the District of South Carolina.  Id.  Two of those cases remain pending:  In re Labsource,

LLC, Case No. 19-05161-hb (Bankr. D.S.C.); In re Oaktree Medical Centre, PC, Case No. 19-

05155-hb (Bankr. D.S.C.).  Another case was terminated on March 28, 2024.  See In re Oaktree

Medical Centre, LLC, Case No. 19-05154-hb (Bankr. D.S.C.).

> ### E.  The Trustee's Letter to Daileader Alleging Breach of Fiduciary Duty, and the Insurers' Coverage Determinations

In an April 1, 2021 letter to Daileader, John Fort – the Bankruptcy Trustee for the

Oaktree estates – asserts that "Daileader and a consulting firm he had engaged while at Oaktree

are 'jointly and severally liable to the Estates for their failure to comply with South Carolina law

by breaching their fiduciary duties while engaged as officers and directors of the Debtors.'"

Daileader I, 670 F. Supp. 3d at 23 (citing Apr. 1, 2021 Trustee Ltr. (Dkt. No. 43-8) at 5)

In an April 30, 2021 letter to Oaktree's insurance broker, Landmark agreed to

defend Daileader against the Trustee's claims.  Id. (citing Apr. 30, 2021 Landmark Ltr. (Dkt. No.

43-19) at 2).  In an August 2, 2021 letter to Oaktree's insurance broker, however, Syndicate 1861

– through its agent, ANV Global Services, Inc. – "states that it is denying coverage to Daileader

because the Trustee's claims against him fall within the Bankruptcy/Insolvency Exclusion of the

Policy."  Id. at 24 (citing Aug. 2, 2021 Denial Ltr. (Dkt. No. 43-23))[4]

---

[4]  The other excess insurers denied coverage under this same exclusion.  Id. (citing FAC (Dkt. No. 15) ¶ 45)

**F.    The Adversary Complaints Against Daileader**

On September 17, 2021, "the Trustee filed three 'analogous adversary proceeding complaints' against Daileader and others in the Oaktree bankruptcy proceedings." Id.[5]  The Trustee filed amended adversary complaints on December 7, 2021.  See, e.g., Fort v. Daileader, Adv. Proc. 21-80057-hb, Am. Cmplt. (Dkt. No. 33) (Bankr. D.S.C.)

The amended adversary complaints allege that Daileader "'made no attempt to coordinate a sale or refinance of [Oaktree]'"; that Daileader "'did not even begin a corporate restructuring'"; and that "once it was clear that Oaktree would have to file for bankruptcy, Daileader failed to steer Oaktree into a Chapter 11 reorganization, rather than a Chapter 7 liquidation." Daileader I, 670 F. Supp. 3d at 24 (citing Fort v. Daileader, Adv. Proc. 21-80057-hb, Am. Cmplt. (Dkt. No. 33) at 2 (Bankr. D.S.C.)); see also Fort v. Daileader, Adv. Proc. 21-80057-hb, Am. Cmplt. (Dkt. No. 33) ¶¶ 40, 93-94, 102-03, 149, 159 (Bankr. D.S.C.).  As a result, Daileader "wrongfully caused Oaktree to incur millions of dollars in unnecessary professional fees and . . . [Oaktree's] total assets fell from approximately $11.8 million on July 1, 2018 to approximately $6.8 million on August 1, 2019.  Total liabilities increased from approximately $27 million to approximately $39 million during the same period.'" Daileader I, 670 F. Supp. 3d at 24 (citing Fort v. Daileader, Adv. Proc. 21-80057-hb, Am. Cmplt. (Dkt. No. 33) at 2, ¶¶ 73, 76, 104 & n.13, 113, 147, 169, 209 (Bankr. D.S.C.)).

The amended adversary complaints allege claims against Daileader for "breach of fiduciary duty, negligence, fraud, civil conspiracy, unjust enrichment, fraudulent transfers in violation of 11 U.S.C. § 548(a)(1)(A), constructive fraudulent transfers in violation of 11 U.S.C.

---

[5]  The three adversary proceedings are Adv. Proc. Nos. 21-80057-hb, 21-80058-hb, and 21-80059-hb (Bankr. D.S.C.).

§ 548(a)(1)(B), preference liability under 11 U.S.C. § 547, recovery of avoided transfers under 11 U.S.C. § 550, and breach of contract." Id. (citing Fort v. Daileader, Adv. Proc. 21-80057-hb, Am. Cmplt. (Dkt. No. 33) at passim (Bankr. D.S.C.)).

### G.    Resolution of the Adversary Proceedings

After the Trustee filed the adversary complaints, Syndicate 1861 – through its agent ANV – sent an October 27, 2021 letter to Oaktree's insurance broker stating that it "'maintain[ed] its position that coverage is precluded for Daileader . . . by virtue of the Primary Policy's Bankruptcy/Insolvency Exclusion.'" Id. (quoting Oct. 27, 2021 Denial Ltr. (Dkt. No. 43-22) at 3)

In a July 8, 2022 letter to Oaktree's broker, Landmark states that "'it ha[s] exhausted the $1,000,000 limit of the Landmark Policy and that it [has] therefore stopped defending Daileader.'" Id. (quoting Dunn Decl. (Dkt. No. 44) ¶ 19; see July 8, 2022 Landmark Ltr. (Dkt. No. 44-3)) Syndicate 1861 did not provide a defense for Daileader after Landmark terminated coverage. Id.

On December 7, 2023, Daileader entered into a settlement agreement with the Trustee resolving the three adversary proceedings. See, e.g., Fort v. Daileader, Adv. Proc. 21-80057-hb, Dec. 7, 2023 Settlement Order (Dkt. No. 409) (Bankr. D.S.C.) In the settlement agreement, Daileader and two other defendants[6] agreed to pay $650,000 in exchange for a release of all claims against them in the adversary proceedings.[7] Fort v. Daileader, Adv. Proc.

---

[6] The other defendants are Mark Freedlander and Freedlander's law firm, McGuireWoods LLP. The amended adversary complaints allege that Daileader caused Oaktree to retain Freedlander and McGuireWoods in 2018 to assist with Oaktree's corporate restructuring. Fort v. Daileader, Adv. Proc. 21-80057-hb, Am. Cmplt. (Dkt. No. 409) ¶¶ 26, 32 (Bankr. D.S.C.).

[7] The settlement agreement does not specify how the $650,000 payment will be allocated among Daileader, Freedlander, and McGuireWoods. Id.

21-80057-hb, Settlement Agmt. (Dkt. No. 396-1) at 3-4 (Bankr. D.S.C.)  In the settlement

agreement, Daileader denies the allegations in the amended adversary complaints (id.), and the

adversary proceedings terminated on January 12, 2024, without any finding of wrongdoing on

Daileader's part.

## II.    **PROCEDURAL HISTORY**

The parties' disputes have spawned two actions in this District.  On February 1,

2022, the excess insurers brought a declaratory judgment action in New York state court against

Daileader under the New York C.P.L.R., which Daileader removed to this Court on March 11,

2022.  In a January 13, 2023 order, this Court remanded that case to New York state court.  See

Certain Underwriters at Lloyd's London - Syndicate 1861 v. Daileader, No. 22 CIV. 2038

(PGG), 2023 WL 185518 (S.D.N.Y. Jan. 13, 2023).

On March 18, 2022, Daileader filed the instant Complaint in U.S. District Court

for the District of South Carolina.  (Dkt. No. 1)  Daileader filed the First Amended Complaint on

May 18, 2022.  (Dkt. No. 15)  On June 7, 2022, Daileader moved in the District of South

Carolina for a preliminary injunction directing Defendant Syndicate 1861 to defend him in the

adversary proceedings and to pay his legal expenses as they are incurred.  (Dkt. No. 18)

In a June 23, 2022 order, the U.S. District Court for the District of South Carolina

transferred the instant action to this District, where the first-filed action was then pending.  See

Daileader v. Certain Underwriters at Lloyd's London - Syndicate 1861, No. CV 7:22-916-HMH,

2022 WL 2276461 (D.S.C. June 23, 2022).

On August 17, 2022, Daileader filed an amended motion for a preliminary

injunction, seeking an order directing Syndicate 1861 to defend him in the adversary proceedings

and to pay his legal expenses as they are incurred.  (Dkt. No. 41)  On February 8, 2023, this

Court conducted a hearing concerning Plaintiff's application.  (Feb. 8, 2023 Tr. (Dkt. No. 75))

Plaintiff filed the Second Amended Complaint on February 21, 2023.  (Dkt. No. 81)

In an April 20, 2023 memorandum opinion and order, this Court denied Plaintiff's application for a preliminary injunction.  See Daileader I, 670 F. Supp. 3d 12.  Daileader filed a notice of appeal on April 26, 2023.  (Dkt. No. 89)

In a November 15, 2023 order, the Second Circuit affirmed this Court's April 20, 2023 decision, stating that "[a]n opinion will follow in due course."  Daileader v. Certain Underwriters at Lloyds London Syndicate 1861, No. 23-690-CV, 2023 WL 7648381, at *1 (2d Cir. Nov. 15, 2023) (summary order).

Syndicate 1861 filed an answer to the Second Amended Complaint on December 15, 2023.  (Dkt. No. 94)

On January 2, 2024, Plaintiff filed a notice of voluntary dismissal as to all Defendants except for Syndicate 1861.  (Dkt. No. 98)

In a January 4, 2024 order, this Court stated that "the stay in this matter will continue for an additional sixty days pending the issuance of an opinion from the United States Court of Appeals for the Second Circuit."  "If the Second Circuit has not issued an opinion by February 29, 2024, the parties will submit a joint proposed Civil Case Management Plan and Scheduling Order on that day."  (Dkt. No. 99)

On March 18, 2024, the Second Circuit issued an opinion in Daileader v. Certain Underwriters at Lloyds London Syndicate 1861, 96 F.4th 351 (2d Cir. 2024) ("Daileader II").  In that opinion, the court explained its reasoning for affirming this Court's April 20, 2023 decision denying Plaintiff's application for a preliminary injunction.

This Court entered a Civil Case Management Plan and Scheduling Order on March 19, 2024.  (Dkt. No. 102)

In May 15, 2024 letters, Syndicate 1861 requested a pre-motion conference in connection with two anticipated motions.  The first letter describes Syndicate 1861's instant motion for a stay of discovery pursuant to Rule 26(c).  (Dkt. No. 106)  The second letter describes Syndicate 1861's anticipated motion for summary judgment.  (Dkt. No. 105)

In a May 16, 2024 joint letter, the parties apprised the Court of a number of discovery disputes.  (Dkt. No. 107)

On June 17, 2024, this Court set a briefing schedule for Syndicate 1861's motion for a stay of discovery.  (Dkt. No. 118)  Syndicate 1861 filed its moving papers on June 25, 2024 (Dkt. No. 119), and Plaintiff filed an opposition on July 2, 2024.  (Dkt. No. 120)

## DISCUSSION

Syndicate 1861 moves for a stay of discovery pursuant to Fed. R. Civ. P. 26(c)(1), pending resolution of its anticipated motion for summary judgment.  (Def. Br. (Dkt. No. 119-1) at 6)  Daileader opposes a discovery stay.  (Pltf. Opp. (Dkt. No. 120) at 5-6)

## I.    LEGAL STANDARDS

### A.    Protective Orders under Rule 26(c)

Under Rule 26(c)(1), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A).  "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).  "The burden of showing good cause for the issuance

of a protective order falls on the party seeking the order." <u>Republic of Turkey v. Christie's, Inc.</u>, 312 F. Supp. 3d 385, 388 (S.D.N.Y. 2018).

"The pendency of a dispositive motion is not, in itself, an automatic ground for a stay." <u>Spinelli v. Nat'l Football League</u>, No. 13 CIV. 7398 (RWS), 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015). Instead, where a dispositive motion is pending, "courts consider three factors: 1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, 2) the breadth of discovery and the burden of responding to it, and 3) the risk of unfair prejudice to the party opposing the stay." <u>Id.</u> "With respect to the 'strength of the motion' prong of this analysis, the party seeking a stay must present 'substantial arguments for dismissal[ ].'" <u>Kaplan v. Lebanese Canadian Bank, SAL</u>, 610 F. Supp. 3d 533, 534 (S.D.N.Y. 2022) (brackets in original) (quoting <u>Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.</u>, 297 F.R.D. 69, 72 (S.D.N.Y. 2013)). In other words, "this standard requires 'a strong showing that the plaintiff's claim is unmeritorious.'" <u>Id.</u> (quoting <u>Hong Leong Fin.</u>, 297 F.R.D. at 72).

**B.    <u>Interpretation of Insurance Policies</u>[8]**

"Under New York law, '[i]t is well established that' courts 'determining a dispute over insurance coverage [must] first look to the language of the policy.'" <u>Danaher Corp. v. Travelers Indem. Co.</u>, 414 F. Supp. 3d 436, 448–49 (S.D.N.Y. 2019) (quoting <u>Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 21 N.Y.3d 139, 148 (2013); and <u>Consol. Edison Co. of N.Y. v. Allstate Ins. Co.</u>, 98 N.Y.2d 208, 221 (2002)) (brackets in <u>Danaher</u>). "The language of the policy is then to be 'interpreted according to general rules of

---

[8] The Syndicate 1861 Policy provides that "[a]ll matters arising hereunder including questions related to the validity, interpretation, performance, and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York notwithstanding New York's conflicts of law rules." (Syndicate 1861 Policy (Dkt. No. 43-2) at 13) Moreover, both sides have cited New York law. Accordingly, this Court will apply New York law.

contract interpretation.' Doing so mandates that 'the language of the contracts . . . be interpreted according to common speech and consistent with the reasonable expectation of the average insured.'" Id. (quoting Olin Corp. v. Am. Home Assurance Co., 704 F.3d 89, 98 (2d Cir. 2012); and In re Viking Pump, Inc., 27 N.Y.3d 244, 257 (2016)). "Ambiguities in contract language must be construed in favor of the insured, [b]ut 'a contract is not ambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.' . . . 'If a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning.'" Id. (quoting Viking Pump, 27 N.Y.3d at 258; and Liberty Mut. Ins. Co. v. Fairbanks Co., 170 F. Supp. 3d 634, 642-43 (S.D.N.Y. 2016)) (brackets in Danaher); see also Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 390 (S.D.N.Y. 2014) ("'[E]xtrinsic evidence may not be considered unless the [contract] itself is ambiguous.'" (quoting Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade, 98 A.D.3d 403, 406 (1st Dept. 2012)).

"'In New York, an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify.'" Admiral Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85, 93 n.2 (2d Cir. 2023) (quoting Euchner-USA, Inc. v. Hartford Cas. Ins. Co., 754 F.3d 136, 140 (2d Cir. 2014)) (in turn quoting Auto. Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137 (2006)). "The duty to defend arises whenever the underlying complaint alleges facts that fall within the scope of coverage[,] . . . . [and] [t]he ultimate validity of the underlying complaint's allegations is irrelevant." Fed. Ins. Co. v. Kozlowski, 18 A.D.3d 33, 40-41 (1st Dept. 2005); see Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 310 (1984) ("[T]he duty of the insurer to defend the insured

rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased.").

"[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." Seaboard, 64 N.Y.2d at 311 (internal quotations and citations omitted).

## II.    ANALYSIS

Syndicate 1861 argues that its anticipated summary judgment motion presents "purely a question of law that is potentially dispositive of this lawsuit." As a result, "there are no factual issues in need of further immediate exploration [in discovery by Daileader]." (Def. Br. (Dkt. No. 119-1) at 13-14) And given this Court's and the Second Circuit's rejection of Daileader's application for a preliminary injunction, see Daileader I, 670 F. Supp. 3d 12, and Daileader II, 96 F.4th 351, Syndicate 1861 argues that it has "demonstrated that Daileader's claims are unmeritorious." Its anticipated summary judgment motion is thus "particularly strong." (Id. at 20-21) Syndicate 1861 also contends that Daileader's proposed discovery is "overly broad," and would "result in undue burden and expense." (Id. at 25)

Daileader counters that Syndicate 1861 "cannot meet its burden of showing that [his] claims will be resolved on summary judgment without further discovery," and that he "will suffer substantial prejudice if he is precluded from taking discovery." (Pltf. Opp. (Dkt. No. 120)

at 6)  Daileader therefore opposes a stay of discovery as to most of the issues disputed by the parties.[9]

### A. Whether Syndicate 1861 Has Made a Strong Showing that Daileader's Claims Are Non-Meritorious

Daileader contends that discovery should not be stayed as to the following two issues that will be raised in Syndicate 1861's motion for summary judgment:  (1) whether the Bankruptcy/Insolvency Exclusion is applicable to the adversary proceedings; and (2) whether the Bankruptcy/Insolvency Exclusion violates Section 541(c)(1) of the Bankruptcy Code.  (Pltf. Opp. (Dkt. No. 120) at 22-26)

#### 1. Whether the Bankruptcy/Insolvency Exclusion Is Applicable to the Adversary Proceedings

This Court and the Second Circuit have both addressed the merits of the parties' dispute – i.e., whether Syndicate 1861 is obligated to defend Daileader in the adversary proceedings – and both concluded that the Bankruptcy/Insolvency Exclusion in the Policy is applicable.

In Daileader I, this Court reasoned as follows:

> The relevant inquiry under the Exclusion is . . . whether the adversary proceedings constitute a "Claim . . . [a]lleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part" either (1) "any Wrongful Act that is alleged to have caused, directly or indirectly, in whole or in part" Oaktree's insolvency or bankruptcy as set forth in clause 1(a); or (2) "the Insured Organization having sustained a financial loss due to a Wrongful Act by or on behalf of any Insured Person that actually or allegedly occurred before the date that the Insured Organization or other party sought protection of the Insured Organization['s] assets by any means," as set forth in clause 2.  (Id.)

> As discussed above, "Claim" is defined in the Policy as (1) [a] written demand for monetary or non-monetary relief; or (2) [a] civil, criminal, administrative,

---

[9] Daileader does not oppose immediate cross-motions for summary judgment as to one issue: whether the Bankruptcy/Insolvency Exclusion is void under Section 365(e)(1) of the Bankruptcy Code.  (Pltf. Opp. (Dkt. No. 120) at 9-13)

regulatory or arbitration proceeding, or arbitration demand for monetary or non-monetary relief which is commenced by [r]eceipt or service of a complaint or similar pleading." (Id. at 42 (list formatting and numbering altered))  "All Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single Claim for all purposes under [the Policy]." (Id. at 15)

. . . .

"Claim" is defined to include "a civil proceeding" (Landmark Policy (Dkt. No. 43-2) at 42), and the adversary proceedings are civil proceedings.  Therefore, the Bankruptcy/Insolvency Exclusion applies if the adversary proceedings, "as a whole," [XL Specialty Ins. Co. v. Agoglia, No. 08 CIV.3821(GEL), 2009 WL 1227485, *9 (S.D.N.Y. Apr. 30, 2009)], "[a]lleg[e], aris[e] out of, [are] based upon, [are] attributable to, or in any way involve[], directly or indirectly, in whole or in part" allegations that Daileader caused Oaktree's bankruptcy or insolvency or caused Oaktree to incur a financial loss.  (Landmark Policy (Dkt. No. 43-1) at 33)  Moreover, the Landmark Policy provides that "[a]ll Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single Claim for all purposes under [the Policy]." (Id. at 15)

The amended adversary complaints allege that Daileader "made no attempt to coordinate a sale or refinance of [Oaktree] and did not even begin a corporate restructuring," and that – once it was clear that Oaktree would have to file for bankruptcy protection – Daileader failed to steer Oaktree into a Chapter 11 reorganization, rather than a Chapter 7 liquidation. Fort v. Daileader, Adv. Proc. 21-80057-hb, Am. Cmplt. (Dkt. No. 33) at 2 (Bankr. D.S.C.); see also id. ¶¶ 40, 93-94, 102-03, 149, 159.  Considered as a whole, the adversary proceedings thus allege that Daileader "caused, directly or indirectly, in whole or in part" Oaktree's bankruptcy. (Landmark Policy (Dkt. No. 43-1) at 33)

The amended adversary complaints further allege that Daileader wrongfully caused Oaktree to incur millions of dollars in unnecessary professional fees and that "[o]n Mr. Daileader['s] watch, [Oaktree's] total assets fell from approximately $11.8 million on July 1, 2018 to approximately $6.8 million on August 1, 2019.  Total liabilities increased from approximately $27 million to approximately $39 million during the same period." Fort v. Daileader, Adv. Proc. 21-80057-hb, Am. Cmplt. (Dkt. No. 33) at 2, ¶¶ 73, 76, 104 & n.13, 113, 147, 169, 209 (Bankr. D.S.C.).  In short, the amended adversary complaints allege that Oaktree "sustained a financial loss due to a Wrongful Act by or on behalf of [Daileader] that actually or allegedly occurred before" Oaktree's bankruptcy filing. (Landmark Policy (Dkt. No. 43-1) at 33)

Daileader I, 670 F. Supp. 3d. at 40-42 (brackets in original) (emphases omitted).

In Daileader I, this Court also addressed Daileader's arguments as to why the Bankruptcy/Insolvency Exclusion is not applicable to the adversary proceedings. The Court concluded – after several pages of analysis – that Daileader's arguments are not persuasive. Id. at 43-46. This Court therefore found that "the adversary proceedings fall within the scope of the Bankruptcy/Insolvency Exclusion" and that "Daileader has not made a clear showing of a likelihood of success on the merits, or even presented serious questions going to the merits." Id. at 46.

In Daileader II, the Second Circuit affirmed this Court's holding:

> The Trustee alleged that Daileader "made no attempt to coordinate a sale or refinance of the Debtors and did not even begin a corporate restructuring." App'x 292. Instead, "[a]s the Debtors' assets were quickly depleted and the liabilities grew, [Daileader and his codefendants] collected professional fees totaling nearly $5 million." Id. When "there were no more funds to pay those fees," Daileader filed for chapter 7 liquidation on behalf of the debtors. Id.; see also id. at 315-17. These allegations underlay seven causes of action, some under state law and others under the Bankruptcy Code. See id. 317-39.

> The crucial issue, then, is whether the adversary proceedings were "Claims" excluded from coverage. Citing New York contract law, Daileader argues that if the policy provides coverage against any of the Trustee's causes of action, then Syndicate 1861 must defend against them all. Relying upon the contract, the Syndicate insists upon the inverse: if the policy excludes from coverage any of the Trustee's causes of action, then the Syndicate need not defend Daileader against any of them.

> We believe that Syndicate 1861 has the better argument. As relevant here, the policy defines a "Claim" as a "civil . . . proceeding," rather than as a cause of action within a proceeding. App'x 63. Moreover, the Bankruptcy/Insolvency Exclusion applies to "any Claim . . . [a]lleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, any" otherwise-excludable "Wrongful Act." App'x 54. Daileader does not – and could not – seriously dispute that the Trustee alleged "Wrongful Acts" within the meaning of the policy. Thus, the adversary proceedings were civil proceedings arising in part out of otherwise-excludable conduct – precisely what the Exclusion contemplates.

This plain contractual language defeats Daileader's invocation of general New York contract principles. Daileader contends that an exclusion to a duty to defend applies only where allegations lie "wholly within the exclusion." Appellant's Br. 42 (quoting Westpoint Int'l, Inc. v. Am. Int'l S. Ins. Co., 71 A.D.3d 561, 562, 899 N.Y.S.2d 8 (1st Dep't 2010) (internal quotation marks omitted)). Westpoint further indicates that defining "'Claim' to mean lawsuit" does not automatically permit denying coverage where some allegations may be covered and others not. 71 A.D.3d at 562, 899 N.Y.S.2d 8. But the exclusion in Westpoint was not so sweeping as the one at issue here: it did not extend to claims "in any way involving . . . in whole or in part" the conduct in question. App'x 54; see Westpoint Int'l, Inc. v. Am. Int'l S. Ins. Co., No. 116832/07, 2009 WL 2207520 (N.Y. Sup. Ct. July 13, 2009) (quoting the exclusion). In this case, New York contract law's powerful default rules have likely been overcome by the policy's express terms.

Daileader II, 96 F.4th at 360.

In opposing a stay of discovery, Daileader contests little of this Court's – or the Second Circuit's – reasoning. Daileader instead argues that this Court "may look to facts outside of the underlying complaint[s] [in the adversary proceedings]" – such as the Trustee's deposition testimony and the parties' settlement agreement – "to confirm or clarify the nature of the underlying claims" when determining whether the Bankruptcy/Insolvency Exclusion is applicable. Daileader contends that – when those materials are considered – it becomes clear that the Bankruptcy/Insolvency Exclusion does not apply. (Pltf. Opp. (Dkt. No. 120) at 16-17, 22-25 (citing Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 89 N.Y.2d 621, 635 (1997))

This Court rejected a virtually identical argument in Daileader I. In moving for a preliminary injunction, Daileader argued that

> "'even if certain allegations in the Adversary Proceedings fell within the terms of the Bankruptcy/Insolvency Exclusion, the applicability of the exclusion cannot be resolved until the Adversary Proceedings are resolved. That is because Syndicate 1861's argument that the Bankruptcy/Insolvency Exclusion applies depends on factual issues that may only be adjudicated in the Adversary Proceedings.'"

Daileader I, 670 F. Supp. 3d at 46 (quoting Pltf. PI Br. (Dkt. No. 42) at 31)

This Court found that Daileader's argument was "not persuasive," because

> the duty to defend depends on the allegations in the underlying complaint, and not on whether those allegations are ultimately proven true. See Kozlowski, 18 A.D.3d at 41, 792 N.Y.S.2d 397 ("The ultimate validity of the underlying complaint's allegations is irrelevant. 'The existence of the duty is dependent upon whether sufficient facts are stated so as to invoke coverage under the policy.'") (quoting Am. Home Assur. Co. v. Port Auth. of New York & New Jersey, 66 A.D.2d 269, 278, 412 N.Y.S.2d 605 (1st Dept. 1979)).

Id.

Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 89 N.Y.2d 621 (1997) – cited by Daileader (Pltf. Opp. (Dkt. No. 120) at 22-25) – is not on point. In Northville, the New York Court of Appeals considered whether a general liability policy's pollution exclusion clause relieved insurers of their duty to defend. At issue was an exception to the exclusion clause for a discharge of pollutants that was "sudden and accidental." Northville, 89 N.Y.2d at 630-31.[10] The complaints in the underlying tort action did not contain "allegations . . . from which any claim of an abrupt, environmentally significant discharge of pollutants could be inferred," however. Indeed, "the allegations regarding the temporal aspects of the petroleum leakages actually describe them as having occurred continuously over a period of many years, suggesting the opposite of suddenness." Id. at 635.

The Northville court cautioned that,

> [i]n determining whether the underlying complaint can be read as even potentially bringing the claim within the sudden and accidental exception to the exclusion of pollution coverage, a court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint "that is linguistically conceivable but tortured and unreasonable" (State of New York v Amro Realty Corp., 936 F2d 1420, 1428 [2d Cir] [applying New York law]). Moreover, a court may look to judicial admissions in the insured's responsive

---

[10]  The pollution exclusion clause "barr[ed] coverage for bodily injury or property damage 'arising out of the discharge, dispersal, release or escape of . . . toxic chemicals, liquids . . . or other . . . pollutants into or upon land[,] . . . but this exclusion [did] not apply if such discharge, dispersal, release or escape [was] sudden and accidental.'" Id. (emphasis in original).

pleadings in the underlying tort action or other formal submissions in the current
or underlying litigation to confirm or clarify the nature of the underlying claims.

Id. at 634-35 (citation omitted) (brackets in original).

The Court of Appeals then considered "affidavits submitted by [Northville's]
chief legal officer in support of its motion for summary judgment" to confirm that the "sudden
and accidental" discharge exception to the pollution exclusion was not applicable. Id. at 635; see
also Avondale Indus., Inc. v. Travelers Indem. Co., 774 F. Supp. 1416, 1424 (S.D.N.Y. 1991)
("'[W]hile it is true that a court should be hesitant to leave the boundaries of the complaint in
making its determination on an insured's duty to defend, it need not ignore positive proof,
extrinsic to the complaint, that assists in clarifying an ambiguous allegation.'" (quoting Town of
Moreau v. Orkin Exterminating Co., 165 A.D.2d 415, 418 (3d Dep't 1991) (brackets in
original)).

Here, by contrast, Daileader has not demonstrated that extrinsic evidence related
to the adversary proceedings is necessary to "confirm or clarify" the nature of the claims in those
proceedings. Northville, 89 N.Y.2d at 634-35. Indeed, in Daileader I this Court summarized the
nature of the claims in the amended adversary complaints, finding that the Trustee

> allege[d] that Daileader "made no attempt to coordinate a sale or refinance of
> [Oaktree] and did not even begin a corporate restructuring," and that – once it was
> clear that Oaktree would have to file for bankruptcy protection – Daileader failed
> to steer Oaktree into a Chapter 11 reorganization, rather than a Chapter 7
> liquidation. Fort v. Daileader, Adv. Proc. 21-80057-hb, Am. Cmplt. (Dkt. No. 33)
> at 2 (Bankr. D.S.C.); see also id. ¶¶ 40, 93-94, 102-03, 149, 159. Considered as a
> whole, the adversary proceedings thus allege that Daileader "caused, directly or
> indirectly, in whole or in part" Oaktree's bankruptcy. (Landmark Policy (Dkt.
> No. 43-1) at 33)

> The amended adversary complaints further allege that Daileader wrongfully
> caused Oaktree to incur millions of dollars in unnecessary professional fees and
> that "[o]n Mr. Daileader['s] watch, [Oaktree's] total assets fell from
> approximately $11.8 million on July 1, 2018 to approximately $6.8 million on
> August 1, 2019. Total liabilities increased from approximately $27 million to
> approximately $39 million during the same period." Fort v. Daileader, Adv. Proc.

21-80057-hb, Am. Cmplt. (Dkt. No. 33) at 2, ¶¶ 73, 76, 104 & n.13, 113, 147, 169, 209 (Bankr. D.S.C.). In short, the amended adversary complaints allege that Oaktree "sustained a financial loss due to a <u>Wrongful Act</u> by on or behalf of [Daileader] that actually or allegedly occurred before" Oaktree's bankruptcy filing. (Landmark Policy (Dkt. No. 43-1) at 33)

<u>Daileader I</u>, 670 F. Supp. 3d at 24.

This Court found no ambiguity as to what the amended adversary complaints alleged. Nor did the Second Circuit. <u>See</u> <u>Daileader II</u>, 96 F.4th at 359-60 ("Daileader does not – and could not – seriously dispute that the Trustee alleged 'Wrongful Acts' within the meaning of the policy. Thus, the adversary proceedings were civil proceedings arising in part out of otherwise-excludable conduct – precisely what the Exclusion contemplates. This plain contractual language defeats Daileader's invocation of general New York contract principles.").

Daileader does not contest this Court's reading of the amended adversary complaints, nor does he point to any alleged ambiguity in the complaints' allegations. Daileader instead points to subsequent fact-development in the adversary proceedings regarding "whether [the Trustee's] allegations [were] ultimately proven true." <u>Daileader I</u>, 670 F. Supp. 3d at 46 (citing <u>Kozlowski</u>, 18 A.D.3d at 41). As explained above, however, the issue for purposes of the Bankruptcy/Insolvency Exclusion is what was claimed in the adversary proceedings, and not what was ultimately proven or not proven.

Daileader also cites to <u>Almar, Inc. v. Utica Mut. Ins. Co.</u>, 280 A.D.2d 624 (2d Dep't 2001), however, in which the court – in determining whether an insurer had a duty to defend – relied upon "information supplied by the plaintiff [insured]" that contradicted

allegations in the underlying tort complaint.[11]  (Pltf. Opp. (Dkt. No. 120) at 25) (citing Almar,

280 A.D.2d at 625)

       Here – even assuming arguendo that this Court could consider extrinsic evidence

from the adversary proceedings in determining whether the Bankruptcy/Insolvency Exclusion is

applicable – the Trustee's deposition testimony appears to be largely consistent with the

allegations in the amended adversary complaints.

       Daileader argues that the Trustee's testimony during the adversary proceedings

indicates that he is not alleging that Daileader "caused . . . [t]he bankruptcy or insolvency"

within the meaning of the Bankruptcy/Insolvency Exclusion, because

> the Trustee testified that the debtors were insolvent prior to Daileader's
> appointment as a director of Oaktree Medical Centre, PC and that he allegedly
> breached his fiduciary duties and was negligent when he did not initiate a Chapter
> 11 bankruptcy at the outset of his appointment.  The Trustee testified that
> Daileader should have filed a Chapter 11 case in order to get control over
> negotiations concerning an affiliate's non-binding letter of intent to sell Oaktree's
> business that was signed in late July 2018 and was the subject of ongoing due
> diligence and exclusivity through October 2018, when the putative purchaser let it
> expire.
>
> Moreover, the Trustee confirmed that he was not alleging that the debtors
> "sustained a financial loss due to a Wrongful Act by or on behalf of [Daileader]
> that actually or allegedly occurred before the date that the" debtors became
> insolvent.  According to the Trustee, the debtors had been insolvent long before
> Daileader's appointment and the debtors plainly could not have sustained a
> "financial loss" due to a Wrongful Act by Daileader before the date that the
> Insured Organization became insolvent.  Rather, the Trustee testified that the
> purported damages he sought were for the "debts of the company" that allegedly
> "went up substantially while" Daileader and the other restructuring professional

---

[11]  In Almar, the insurance policy "exclude[d] coverage for bodily injury to employees arising
while in the course of their employment."  Id. at 624.  The complaint in the underlying tort action
alleged that the plaintiff-employee "was injured while acting in the course of her employment,"
and the insurer denied coverage on that basis.  Id. at 625.  Later in the tort action, however, "the
plaintiff made the defendant aware that the employee was not working at the time of the injuries,
but rather, was visiting the premises as a customer."  Id.  The Almar court held that, given these
circumstances, the insurer "could not ignore the information supplied by the [tort] plaintiff in
assessing its duty to defend."  Id.

defendants "were in control" (Ex. P at 744:3-5), but not prior to Oaktree's insolvency and allegedly due to Daileader's not causing a bankruptcy filing.

(Pltf. Opp. (Dkt. No. 120) at 23-24) (emphasis in original)

In moving for a preliminary injunction, Daileader made this same argument – premised on allegations in the amended adversary complaints – which this Court rejected:

> According to Daileader, the adversary proceedings contain allegations that might result in coverage, because (1) "the Trustee plainly alleges that the Debtors were already insolvent when Mr. Daileader was appointed as an Independent Director and Manager of Oaktree and that Daileader breached his fiduciary duties and was negligent by failing to file for Chapter 11 bankruptcy – not by causing a bankruptcy filing" as required to trigger clause 1(a) of the Bankruptcy/Insolvency Exclusion; and (2) "the Trustee asserts claims and causes of action that do not allege or assert any 'financial loss' to Oaktree," as required to trigger clause 2 of the Bankruptcy/Insolvency Exclusion, "including the Ninth Cause of Action for a bankruptcy preference regarding alleged 'professional fees' paid to Mr. Daileader in the one year prior to Oaktree's petition date." (Id. at 26-27 (emphases in original))
>
> This argument is unpersuasive for multiple reasons. As an initial matter, Daileader ignores the fact that the amended adversary complaints allege that he failed to explore a sale or restructuring outside of bankruptcy. Fort v. Daileader, Adv. Proc. 21-80057-hb, Am. Cmplt. (Dkt. No. 33) at 2, ¶¶ 40, 93-94, 149 (Bankr. D.S.C.). It is therefore not accurate that the entire thrust of the amended adversary complaints is that Daileader failed to file for Chapter 11 bankruptcy protection.
>
> Moreover, the Bankruptcy/Insolvency Exclusion applies to claims alleging that Daileader "caused, directly or indirectly, in whole or in part" Oaktree's bankruptcy or insolvency. (Landmark Policy (Dkt. No. 43-1) at 33) Courts have interpreted "caused directly or indirectly" to mean "contributed to," not "caused exclusively" or "a but-for cause of." See Cali v. Merrimack Mut. Fire Ins. Co., 43 A.D.3d 415, 417, 841 N.Y.S.2d 128 (2d Dept. 2007) (holding that exclusion for property damage caused "directly or indirectly" by earth movement applied "even though the movement was precipitated, at least in part, by decayed wood in the earth beneath the foundation slab"); Shiffler v. Equitable Life Assur. Soc. of U.S., 838 F.2d 78, 84 (3d Cir. 1988) ("[I]f the policy contains an additional clause precluding recovery if the death was caused directly or indirectly by disease, there can be no recovery if pre-existing disease contributed to the death."); Holman v. Life Ins. Co. of N. Am., 533 F. Supp. 3d 502, 510-11 (S.D. Tex. 2021) (policy language excluding coverage for "any loss which directly or indirectly, in whole or in part, is caused by or results from . . . disease" bars coverage even when "a covered risk – [a] car crash – [was] the proximate and more immediate precipitating cause") (emphasis in original).

<u>Daileader I</u>, 670 F. Supp. 3d at 43-44.

In sum, Daileader has not demonstrated that the Trustee's deposition testimony is inconsistent with the allegations in the amended adversary complaints, much less that any inconsistency would require a finding that the Bankruptcy/Insolvency Exclusion is inapplicable.

For all of these reasons, this Court concludes that Syndicate 1861 has made a "strong showing" that the Bankruptcy/Insolvency Exclusion applies to the adversary proceedings.

### 2. Whether the Bankruptcy/Insolvency Exclusion Violates 11 U.S.C. § 541(c)

11 U.S.C. § 541(c)(1) states that,

[e]xcept as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law –

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

In <u>Daileader I</u>, this Court addressed whether "the proceeds of the Syndicate 1861 Policy are proceeds of Oaktree's estate, so as to trigger application of Section 541(c)." <u>Daileader I</u>, 670 F. Supp. 3d at 48. This Court found that while "Oaktree's estate could conceivably have a property interest in Policy proceeds that it may receive in satisfaction of a judgment against Daileader or a settlement with Daileader resulting from the adversary proceedings," a plaintiff "generally does not have a property interest in the proceeds of a defendant's liability insurance proceeds until the defendant's liability has been established." <u>Id.</u> at 49. This Court went on to

conclude that, "[b]ecause there has been no judgment against Daileader in the adversary

proceedings, any right that Oaktree's estate has to the proceeds of the Syndicate 1861 policy – as

a result of the adversary proceedings – is too attenuated to constitute a property interest under

Section 541(c)." Id.

   The Second Circuit adopted the same reasoning in Daileader II, with the caveat

that a settlement between Daileader and the Trustee might change the result as to whether the

Oaktree estate has a property interest in Syndicate 1861's policy:

> It was conceivable that Oaktree's estate might have a property interest in the
> policy proceeds for the purpose of satisfying a settlement or judgment against
> Daileader resulting from the adversary proceedings. But there had been no such
> monetary resolution in those proceedings, and Daileader's liability had not been
> established. The estate's potential claims, if any, did not create a property interest
> in the proceeds. . . .
>
> We conclude that Daileader did not clearly show that the proceeds of Syndicate
> 1861's policy had become "property of the [Oaktree] estate." 11 U.S.C. §
> 541(c)(1). The Bankruptcy/Insolvency Exclusion therefore properly remained in
> effect following Daileader's preliminary-injunction motion.
>
> Matters may be different as this case proceeds. After oral argument before this
> court, Daileader's counsel informed us that Daileader and the Trustee had entered
> into a settlement agreement that fully resolved all issues in the adversary
> proceedings, and which had been approved by the Bankruptcy Court for the
> District of South Carolina. We express no view as to whether that agreement has
> accorded the Oaktree estate a property interest in the proceeds of Syndicate
> 1861's policy. We entrust consideration of that question, insofar as it remains
> disputed, to the district court.

Daileader II, 96 F.4th at 361-62.

   On December 7, 2023, Daileader entered into a settlement with the Trustee in the

adversary proceedings. See, e.g., Fort v. Daileader, Adv. Proc. 21-80057-hb, Dec. 7, 2023

Settlement Order (Dkt. No. 409) (Bankr. D.S.C.). In the settlement agreement, Daileader and

two other defendants – while continuing to deny liability in connection with the Trustee's

allegations – agreed to pay the Oaktree estate $650,000. <u>Fort v. Daileader</u>, Adv. Proc. 21-80057-hb, Settlement Agmt. (Dkt. No. 396-1) at 3-4 (Bankr. D.S.C.).

In moving to stay discovery pending resolution of its anticipated motion for summary judgment, Syndicate 1861 now argues that Section 541(c)(1) is inapplicable because, "as of the commencement of its bankruptcy, Oaktree did not have a property interest [in] the proceeds of the Syndicate 1861 Policy." (Def. Br. (Dkt. No. 119-1) at 22)  As Syndicate 1861 notes (<u>see</u> <u>id.</u>), Section 541(c)(1) provides that it applies only to "an interest of the debtor in property [that] becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5)." 11 U.S.C. § 541(c)(1).  And Section 541(a)(1) provides that the property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property <u>as of the commencement of the case</u>." <u>Id.</u> § 541(a)(1) (emphasis added).[12]

Citing Section 541(a)(1), Syndicate 1861 argues that "Section 541(c)(1) has no application to property that comes into Oaktree's estate post-petition as profits or proceeds of property held by Oaktree at case commencement." (Def. Br. (Dkt. No. 119-1) at 22) (citing <u>In re Fort Worth Osteopathic Hosp., Inc.</u>, 387 B.R. 706, 715 (Bankr. N.D. Tex. 2008) ("[E]ven if the Trustee may have some entitlement some day to receive proceeds from the Policies, neither he nor Debtors had any 'legal or equitable interest' in proceeds of the Policies when Debtors' cases were commenced, and so he does not have an interest in the proceeds that falls within section

---

[12] Section 541(a)(2) and (a)(5) are not relevant here.  Section 541(a)(2) applies to "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case." <u>Id.</u> § 541(a)(2).  Section 541(a)(5) applies to "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date – (A) by bequest, devise, or inheritance; (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or (C) as a beneficiary of a life insurance policy or of a death benefit plan." <u>Id.</u> § 541(a)(5).

541(a)(1).  Because whatever claim the Trustee may one day have to the proceeds of the Policies did not become property of Debtors' estates under section 541(a)(1), section 541(c)(1) plays no role in the determination of whether the Insurers are liable under the Policies for the conduct of the D & O Insureds.").

Daileader argues, however, that Oaktree had an interest in proceeds from the D&O policy that "preexisted the filing of the Bankruptcy Cases."  (Pltf. Opp. (Dkt. No. 120) at 26)  The premise for this argument is not entirely clear from Daileader's briefing, but it appears to be that Daileader "was entitled to mandatory indemnification from Oaktree under South Carolina law," because he ultimately "was not found liable for any wrongdoing" in the adversary proceedings.  (Id.)  Daileader also contends that the indemnification obligation under South Carolina law "preexisted the filing of the Bankruptcy Cases."  (Id.)  Based on Oaktree's indemnification obligation, Daileader argues that "the Oaktree estate always had a property interest in any payments made or proceeds under any of the Oaktree D&O policies since they provided . . . coverage for amounts for which Oaktree might indemnify Daileader.  In short, the Oaktree estate had a property interest in any payments made under the policies because such payments decreased the liabilities that the estate otherwise would have paid though its obligation to indemnify Daileader."  (Id.)

As to Fort Worth Osteopathic Hospital, Daileader argues that that case is distinguishable, because the court "only considered whether the estate had an interest in the proceeds of a policy to satisfy a judgment against the directors and officers – not a settlement – and did not consider at all whether the estate would benefit from the policy providing defense coverage to the directors and officers."  (Id. at 26-27)  He cites no other authority interpreting Section 541(c)(1).

Nothing in <u>Fort Worth Osteopathic Hospital</u> indicates, however, that the distinction Daileader makes between a "judgment" and a "settlement" – and his argument that the Oaktree "estate would benefit from the policy providing defense coverage to the directors and officers" – would have changed the court's reasoning.  Instead, the holding in <u>Fort Worth Osteopathic Hospital</u> is premised on the text and structure of Section 541, which draws a distinction between "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), which are protected by Section 541(c)(1), and "[p]roceeds, product, offspring, rents, or profits of or from property of the estate," <u>id.</u> § 541(a)(6), which are not.  <u>See</u> <u>In re Fort Worth Osteopathic Hosp.</u>, 387 B.R. at 712-13 ("Section 541(c)(1) is designed to make sure that whatever a debtor has at case commencement [under section 541(a)(1)] or acquires pursuant to section 541(a)(5) becomes property of the estate.  Because it operates only with respect to property that in those ways becomes property of the estate, section 541(c)(1) has no application to property the estate acquires through, <u>e.g.</u>, fraudulent conveyance suits (11 U.S.C. § 541(a)(3) and (4)) or property that comes into the estate post[-]petition as profits or proceeds of property held by a debtor at case commencement.  11 U.S.C. § 541(a)(6)." (footnote omitted))).

Given (1) the text of Section 541; (2) the analysis in <u>Fort Worth Osteopathic Hospital</u>; and (3) Daileader's failure to cite any contrary authority, this Court concludes that Syndicate 1861 has made a "strong showing" that the Bankruptcy/Insolvency Exclusion is not invalid under Section 541(c)(1) of the Bankruptcy Code.

### B.    <u>Whether There is a Risk of Unfair Prejudice to Daileader</u>

Daileader contends that "permitting Syndicate 1861 to move for a stay of discovery pending its motion for summary judgment would deprive [him] of the opportunity to discover information that is essential to his opposition," including the following:

(i) information related to Syndicate 1861's knowledge of facts outside of the allegations in the complaints that establishes its duty to defend – such as those that have come to light through deposition testimony and settlements in the Adversary Proceedings after the briefing on Daileader's PI Motion . . .; (ii) the deposition testimony of Syndicate 1861's claims handlers regarding the underlying facts of the Adversary Proceedings; and (iii) Landmark's handling of the claim and interpretation of the exclusion, which speaks to the reasonable interpretation of the Bankruptcy/Insolvency Exclusion.

(Pltf. Opp. (Dkt. No. 120) at 18-19)

In general, "summary judgment should only be granted '[i]f after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" Hellstrom v. U.S. Dep't of Veterans Affs., 201 F.3d 94, 97 (2d Cir. 2000) (emphasis and brackets in original) (quoting Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996)). "The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." Id. (quoting Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989). Thus, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Id.

Here, Daileader claims that he needs discovery concerning "Syndicate 1861's knowledge of facts outside of the allegations in the [adversary] complaints," because "under New York law, an insurance company's duty to defend is triggered 'where the insurer has actual knowledge of facts establishing a reasonable possibility of coverage.'" (Pltf. Opp. (Dkt. No. 120) at 16) (quoting Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co., 91 N.Y.2d 169, 175 (1997)) (emphasis omitted)

This argument is not persuasive for multiple reasons. As an initial matter, Daileader – who is a party to the adversary proceedings – already possesses the Trustee's deposition testimony (see Mascia Decl., Ex. P (Fort Dep. Tr.) (Dkt. Nos. 121-16 to 121-24)), and

the settlement order in the adversary proceedings (id., Ex. A (Dec. 7, 2023 Order) (Dkt. No. 121-1)), which are the only materials "outside of the allegations in the [adversary] complaints" that he has identified as relevant.  (Pltf. Opp. (Dkt. No. 120) at 23-25)

Daileader has also not explained why additional discovery is necessary to establish Syndicate 1861's "actual knowledge of facts establishing a reasonable possibility of coverage."  As discussed above, the coverage issue here turns on the nature of the allegations made in the adversary proceedings – allegations with which Syndicate 1861 is concededly familiar.  Daileader does not explain what other "knowledge" on Syndicate 1861's part it is necessary for him to establish.  Similarly, it is entirely unclear how depositions of "Syndicate 1861's claims handlers regarding the underlying facts of the Adversary Proceedings" – depositions that Daileader seeks (Pltf. Opp. (Dkt. No. 120) at 19) – would bear on the analysis of Syndicate 1861's proposed summary judgment motion.

Daileader also seeks information related to "Landmark's handling of the claim and interpretation of the exclusion."  (Pltf. Opp. (Dkt. No. 120) at 19)  And in a November 28, 2023 request for production of documents served on Syndicate 1861, Daileader seeks, inter alia, "[a]ll [u]nderwriting [m]anuals"; "[a]ll [c]laims [m]anuals"; "[a]ll [d]ocuments and [c]ommunications that discuss, comment upon, or relate to the origin, drafting, construction, interpretation, or modification of the Bankruptcy/Insolvency Exclusion," and "[a]ll [d]ocuments and [c]ommunications [c]oncerning any reserves set by [Syndicate 1861] in relation to the Trust[ee]'s Claim." (Mascia Decl., Ex. C (Nov. 28, 2023 Daileader Document Request) (Dkt. No. 121-3) ¶¶ 13-14, 18, 21)

Syndicate 1861 argues that these requests are not "proportional to the narrow legal issue remaining in this lawsuit."  (Def. Br. (Dkt. No. 119-1) at 8, 26-27) (citing Computer

<u>Sciences Corp. v. Endurance Risk Solutions Assurance Co.</u>, No. 1:20-CV-01580-MKV, 2022

WL 1192782, at *2 (S.D.N.Y. Mar. 10, 2022)).  Daileader responds that such information is

ordinarily discoverable in insurance coverage actions.  (Pltf. Opp (Dkt. No. 120) at 15, 17)

      <u>Computer Sciences</u> states that,

> in order to properly interpret an insurance policy, it is necessary to discern how
> that policy has been interpreted in the past.  <u>See, e.g.</u>, <u>Virtu Fin. Inc. v. AXIS Ins.
> Co.</u>, No. 20CV6293GBDKHP, 2021 WL 3862857, at *2 (S.D.N.Y. Aug. 30,
> 2021); <u>Mariner's Cove Site B Assocs. v. Travelers Indem. Co.</u>, No.
> 04CIV.1913(KMW)(RLE), 2005 WL 1075400, at *1 (S.D.N.Y. May 2, 2005).
> Moreover, under both New York and Virginia law, evidence of intent can be
> relevant if the Court finds provisions in the Policy to be ambiguous.  <u>See</u>
> <u>Mariner's Cove</u>, 2005 WL 1075400, at *1; <u>Galloway Corp. v. S.B. Ballard Const.
> Co.</u>, 250 Va. 493, 502, 464 S.E.2d 349, 354 (Va. 1995).  Courts in the Second
> Circuit regularly reject arguments like the one asserted by Endurance that an
> insured should be precluded from discovering extrinsic evidence because the
> relevant policy language is unambiguous.  <u>Certain Underwriters at Lloyd's v.
> Nat'l R.R. Passenger Corp.</u>, No. 14-CV-4717 (FB), 2016 WL 2858815, at *10
> (E.D.N.Y. May 16, 2016) (collecting cases).  Objections that unambiguous policy
> language "cannot be undermined through extrinsic evidence presents a challenge
> that goes to admissibility, as opposed to discoverability."  <u>Virtu Fin.</u>, 2021 WL
> 3862857, at *3 (quoting <u>Nat'l R.R. Passenger Corp.</u>, 2016 WL 2858815, at *10).
> "This is especially so in cases where the district judge has yet to rule on the
> ambiguity or clarity of the applicable policy terms."  <u>Id.</u> (quoting <u>Nat'l R.R.
> Passenger Corp.</u>, 2016 WL 2858815, at *10).

<u>Computer Scis. Corp.</u>, 2022 WL 1192782, at *1 (footnote omitted).

      This is manifestly not a case in which "the district judge has yet to rule on the

ambiguity or clarity of the applicable policy terms," however.  <u>Id.</u> (quotation marks and citation

omitted).  And in determining whether Daileader is entitled to the discovery he seeks, relevance

and proportionality must be considered in light of the merits analysis already performed – both

by this Court and the Second Circuit.  Those rulings found no ambiguity in the policy language

at issue, and they identify a narrow range of factual material – essentially, the allegations in the

amended adversary complaints – as relevant to the policy's application.  Given these

circumstances, Daileader cannot demonstrate that he would be prejudiced by a stay of discovery

merely by pointing out that – ordinarily – extrinsic evidence is discoverable in insurance coverage disputes.  He must explain – with some specificity – why the requested discovery might lead to evidence capable of affecting this Court's analysis of Syndicate 1861's proposed summary judgment motion.

Daileader has made no such showing.  With respect to his request for discovery concerning "Landmark's handling of the claim and interpretation of the exclusion," for example, both this Court and the Second Circuit have already concluded that the Bankruptcy/Insolvency Exclusion is applicable, notwithstanding Landmark's decision to defend Daileader under an identically worded provision.  See Daileader I, 670 F. Supp. 3d at 40-46; Daileader II, 96 F.4th at 357, 357 ("It is true that Landmark had paid for Daileader's expenses.  But Landmark's payment decision could not bind the Syndicate.").  Given these rulings, Daileader has not demonstrated how discovery concerning Landmark's "handling of the claim and interpretation of the exclusion" could yield evidence relevant to Syndicate 1861's anticipated summary judgment motion.

As to the discovery Daileader seeks concerning other forms of extrinsic evidence, this Court and the Second Circuit have both interpreted the language of the Syndicate 1861 policy and have concluded that the Bankruptcy/Insolvency Exclusion is applicable to the adversary proceedings.  Neither this Court nor the Second Circuit identified any ambiguities in the policy that would benefit from a consideration of extrinsic evidence – let alone the various items of evidence sought by Daileader.  (See, e.g., Mascia Decl., Ex. C (Nov. 28, 2023 Daileader Document Request) (Dkt. No. 121-3) ¶¶ 13-14, 18, 21)  Nor has Daileader explained in any detail how the requested discovery would be relevant.  For example, he has not identified any language in the policy that he believes is ambiguous; he has not connected any potential

ambiguity with any item of requested discovery; nor has he explained how the discovery he

seeks might alter the analysis that this Court and the Second Circuit have conducted. Finally,

Daileader has not identified any discovery that would be relevant to addressing the Section

541(c)(1) issue.

        For all these reasons, Daileader has not demonstrated that he would be prejudiced

by a stay of discovery pending resolution of Syndicate 1861's anticipated summary judgment

motion.

      **C.**    **The Breadth of Discovery Sought and the Burden of Responding to It**

        Syndicate 1861 argues that Daileader's proposed discovery is "overly broad" and

would "result in undue burden and expense." (Def. Br. (Dkt. No. 119-1) at 25) In response,

Daileader argues that "courts have repeatedly held that '[t]he fact that production of documents

will be time consuming and expensive is not ordinarily a sufficient reason to grant a protective

order if the requested material is relevant and necessary to the discovery of admissible

evidence.'" (Pltf. Opp. (Dkt. No. 120) at 16) (quoting Malzberg v. New York Univ., No. 19-CV-

10048 (LJL), 2020 WL 3618962, at *4 (S.D.N.Y. July 2, 2020)) (brackets in original)

        As discussed above, Daileader has not demonstrated that the discovery he seeks is

likely to yield evidence relevant to the narrow legal issues that remain in this suit. Moreover,

certain of Daileader's discovery requests appear both overbroad and unduly burdensome. For

example, Daileader seeks "[a]ll guidelines, manuals, training or seminar materials, or other

materials or [d]ocuments [c]oncerning directors and officers liability insurance sold by

[Syndicate 1861] from 2013 to the present"; "[a]ll guidelines, manuals, training or seminar

materials, or other materials or [d]ocuments [c]oncerning the handling of insurance claims under

directors and officers liability insurance policies sold by [Syndicate 1861] from 2013 to the

present"; and "[a]ll guidelines, manuals, training or seminar materials, or other materials or

[d]ocuments [c]oncerning the underwriting of directors and officers insurance policies sold by [Syndicate 1861] from 2013 to the present." (Mascia Decl., Ex. C (Nov. 28, 2023 Daileader Document Request) (Dkt. No. 121-3) ¶¶ 23-25)

Tracey Pall, the Vice President of Claims at ANV Global Services – Syndicate 1861's agent – has submitted an affidavit stating that Daileader's requests could encompass "hundreds of thousands and even millions of documents," and that reviewing the relevant materials would "likely [require] hundreds of thousands of hours." (Rivera Decl., Ex. C (Pall Aff.) (Dkt. No. 119-5) ¶¶ 13-14) Moreover, to the extent that Daileader seeks documents related to other D&O policies issued by Syndicate 1861, courts have held that

> the contents of other policies are irrelevant to the extent those policies are not at issue in a case. See John Hancock Life Ins. Co. (USA) v. Meer as Tr. of Everett Fam. Irrevocable Tr., No. 09 CV 2561 (JBW), 2010 WL 11626953, at *4 (E.D.N.Y. May 26, 2010). . . . [R]equiring [defendant insurer] to open every other file for which it has a Tech E&O Policy would clearly be burdensome and not proportional to the needs of this case.

Computer Scis. Corp., 2022 WL 1192782, at *2.

The same finding applies here. Other D&O policies issued by Syndicate 1861 are not at issue in this case, and requiring Syndicate 1861 to respond to Daileader's documents requests "would clearly be burdensome and not proportional to the needs of this case." (Id.)

Accordingly, the overbreadth of Daileader's document requests and the burden associated with responding to them weighs in favor of staying discovery.

## CONCLUSION

For the reasons stated above, Syndicate 1861's motion for a stay of discovery pending resolution of its anticipated summary judgment motion is granted. The Clerk of Court is directed to terminate the motion (Dkt. No. 119).

Briefing concerning Syndicate 1861's motion for summary judgment will proceed on the following schedule.  Movant's brief is due on **April 15, 2025**; opposition is due by **April 30, 2025**; and any reply is due by **May 9, 2025**.

Dated: New York, New York
      March 31, 2025

                    SO ORDERED.

                    Paul G. Gardephe
                    United States District Judge